## In re PROTEST OF BROOKS.

[Cite as *In re Protest of Brooks,* 155 Ohio App.3d 384, 2003-Ohio-6525.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 03–CA–11.

Decided Dec. 5, 2003.

Anne Marie Sferra and Quintin F. Lindsmith, for protestor Keith Brooks.

Mark Altier, Assistant Prosecuting Attorney, for Miami County Board of Elections.

Donald J. McTigue, for appellants William Burga, Athena Godet–Calogeras, Dale Miller, Robert Hagan, and Ohio Coalition for Affordable Prescription Drugs.

GRADY, Judge.

{¶ 1} This is an appeal from a judgment and order that the court of common pleas entered in a review mandated by R.C. 3519.16 of a report of the Miami County Board of Elections to the Secretary of State made pursuant to R.C. 3519.15.

{¶ 2} The board had denied a protest alleging that certain part-petitions supporting a state-wide electoral initiative were insufficient for several reasons. The common pleas court affirmed the board's decision denying the protest in all respects, save one.

{¶ 3} The court found that the part-petitions were not properly verified by the person who had circulated them because they were "false." R.C. 3519.06(D). The falsity concerned the representation of the address of the person from whom the circulator expected to receive payment. Because the part-petitions were not properly verified by their circulators, the court ordered the signatures of electors who had signed them not included in the tabulation of signatures of qualified voters supporting the initiative that the board would report to the Secretary of State.

{¶ 4} The informational requirement at issue appears in R.C. 3519.05. It concerns payments made to persons who solicit signatures of electors. The form of petition that R.C. 3519.05 prescribes contains the following disclosure provision:

{¶ 5} "In consideration for services in soliciting signatures to this petition, the solicitor has received or expects to receive _____ from _____ (Whose address is) _____. Before any elector signs the part-petition, the solicitor shall completely fill in the above blanks if the solicitor has received or will receive any consideration, and if the solicitor has not received and will not receive any consideration, the solicitor shall insert 'nothing.' "

{¶ 6} The parties stipulated that all the part-petitions that were the subject of the protest before the board, except for two, indicated that the solicitor had or would receive compensation from "John Mitchell," whose address was shown to be "2301 E. Sharon Rd., Cincinnati, Ohio 45241." It was not disputed that John Mitchell was at the location when the part-petitions were circulated by qualified voters. Neither was it disputed that the location indicated is a Red Roof Inn motel where Mitchell was temporarily lodged and that he is not a resident of Ohio but a resident of California. The two part-petitions that contained different information indicated that the solicitor, H. Clemons, was paying himself and that his address was Cincinnati and/or Miami, Florida.

{¶ 7} The trial court concluded that the address given for Mitchell, a motel in Cincinnati, "was intentionally used on the petitions to mislead an elector into believing that the person paying the solicitor was a resident of Ohio," and that, as a result, the part-petitions were false in that respect. R.C. 3519.06(D) provides that no petition is properly verified if a statement it contains "is false in any respect." Therefore, the court held that the board of elections had abused its discretion when it rejected the protest on a finding that the part-petitions were properly verified.

{¶ 8} Appellants are members of the committee in whose name the initiative petition was circulated. They present five assignments of error on appeal.

## FIRST ASSIGNMENT OF ERROR

{¶ 9} "The court below lacked subject matter jurisdiction to invalidate part-petitions on a basis not set forth in the initial protest."

{¶ 10} The jurisdiction of the courts of common pleas is determined by statute. Section 4(B), Article IV, Ohio Constitution. R.C. 3519.16 states, "If the circulator of any part-petition, the committee interested therein, or any elector files with the board of elections a protest against the board's findings made pursuant to section 3519.15 of the Revised Code, then the board shall proceed to establish the sufficiency or insufficiency of the signatures and of the verification thereof in an action before the court of common pleas in the county." R.C. 3519.15 governs the board's review of petitions and its findings of their sufficiency.

{¶ 11} R.C. 3519.16 is plainly jurisdictional. Appellants argue that the common pleas court acted outside the jurisdiction conferred on it by that section because the sufficiency or accuracy of the information concerning paid circulators on which the court rejected the part-petitions is not a matter comprehended by "the sufficiency of the signatures and the verification thereof," concerning which R.C. 3519.16 requires judicial review of a board's report after a protest. Appellants also argue that because the board of elections made no findings concerning the circulator's statement as it appears in the part-petitions, that matter was not properly before the court for review.

{¶ 12} We do not agree. R.C. 3519.16 authorizes and directs the court of common pleas to adjudicate an action brought by a board of elections upon the board's "findings made pursuant to section 3519.15 of the Revised Code." When a protest is filed, that section requires the board to "determine any repetition or duplication of signatures, the number of illegal signatures, and the omission of any necessary details required by law." The board must then make a report to the Secretary of State of its findings concerning the sufficiency of the signatures on the part-petitions, "indicating whether or not each part-petition is properly verified." Id.

{¶ 13} The disclosure of the name and address of a payor of any solicitor mandated by R.C 3519.05 is one of the "necessary details" required by law. The board is required by R.C. 3519.15 to report its omission, which comprehends not only the failure to disclose any information at all but also failure to disclose information which is complete and correct. The board's report in this instance

amounts to a "finding" in that regard, for which R.C. 3519.16 requires full judicial review.

{¶ 14} The first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

{¶ 15} "The address of the payor provided in the circulators' compensation statements complies with R.C. 3519.05."

{¶ 16} The common pleas court found that the address for John Mitchell stated on the face of the part-petitions was false, and per R.C. 3519.06(D), held that the part-petitions at issue were therefore not "verified" and that the signatures thereon were therefore insufficient for purposes of the board's report to the Secretary of State. The court acted within its discretion conferred on it by R.C. 3519.16 when it made that finding. Because the court's judgment was founded on its determination of an issue of law, the meaning of R.C. 3519.05 and its disclosure requirements, our review of the error alleged is de novo. For that purpose, we must accept the court's findings of fact as true.

{¶ 17} Use by organized and well-financed interest groups of paid solicitors to circulate petitions in support of the initiative elections has been the subject of concern and disapproval. See Broder, Democracy Derailed: Initiative Campaigns and the Power of Money (2000). Of particular concern is that persons whose support is solicited often are not aware that the solicitor with whom they are dealing is paid for his or her efforts and is thus not necessarily motivated by a desire to advance the public good.

{¶ 18} States have in various ways acted to cure this problem by limiting or restricting paid solicitation. Those efforts are limited by the fact that petition circulation is "core political speech" for which the First Amendment protection is "at its zenith." *Meyer v. Grant* (1988), 486 U.S. 414, 422, 425, 108 S.Ct. 1886, 100 L.Ed.2d 425. Therefore, states may not flatly prohibit payment for the circulation of ballot petitions. Id. States may, however, impose necessary and proper ballot controls that do not unjustifiably inhibit the circulation of ballot-initiative petitions. *Buckley v. Am. Constitutional Law Found., Inc.* (1999), 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599. Among those is a requirement for disclosure of the names of initiative sponsors and the amounts they have spent to gather support, which responds to the state's substantial interest in controlling domination of the initiative process by affluent special interest groups. Id.

{¶ 19} The trial court implicitly held that the paid-solicitor disclosures that R.C. 3519.05 imposes on the form of an initiative petition are in accord with protection of those legitimate state interests when it found that "an Ohio address

was intentionally used on the petition to mislead an elector into believing that the person paying the solicitor was a resident of Ohio." We agree that the fact that support or assistance is obtained by payments from persons outside the state is highly relevant to the substantial state interests of which *Buckley* speaks. The question presented, however, is whether any of the particular disclosures that R.C. 3519.05 requires were not satisfied in this instance, so as to render the disclosures "false" for purposes of R.C. 3519.06(D).

{¶ 20} Election laws are mandatory and require strict compliance, and substantial compliance is acceptable only when an election provision says that it is. *State ex rel. Vickers v. Summit Cty. Council,* 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830. That requirement has been applied to referendum petitions. See *State ex rel. Commt. v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239. Petitions for initiative and for referendum enjoy a like status in the law. See Section 1(g), Article II, Ohio Constitution.

{¶ 21} The dispute here is over the sufficiency or correctness of the information that appeared on the face of the part-petitions disclosing John Mitchell's address. The word *address* derives from Middle English, in which it was a verb in the sense of to "set upright," and to "guide, direct," which later developed into "write directions for delivery on." Oxford Dictionary of Word Histories (2002). It is now defined as a "[p]lace where mail or other communications will reach a person * * *. Generally a place of business or residence." Black's Law Dictionary (6th Ed.Rev.1990) 38. In this context, it is also defined as "the designation of a place (or a residence or place of business) where a person or an organization may be found or communicated with." Webster's Third New International Dictionary (1986) 24–25.

{¶ 22} It is undisputed that the address for John Mitchell stated by the solicitors on the face of the petitions they circulated, "2301 E. Sharon Rd., Cincinnati, Ohio 45241," is a motel or hotel at which Mitchell lodged temporarily, while the part-petitions were circulated for signature. Neither is it disputed that, as the trial court found, "Mr. Mitchell's residence is in California, not Ohio." The court then construed the word "address" as it appears in R.C. 3519.05 to mean the named individual's legal place of residence. That concept, which is generally called "domicile," has two components: an actual residence in a particular jurisdiction, and an intention to make a permanent home in the jurisdiction. *Hager v. Hager* (1992), 79 Ohio App.3d 239, 607 N.E.2d 63.

{¶ 23} The definitions of "address" set out above plainly include residential locations. However, they might as readily include a place of business. The General Assembly did not specify one or the other when it enacted R.C. 3519.05, prescribing the contents of the circulator's declaration that must appear on the

face of any initiative petition. It is noteworthy that immediately following that passage, and with respect to the signatures of electors, R.C. 3519.05 prescribes: "Your name, *residence*, and date of signing must be given." (Emphasis added.) The signer's "residence" is then identified as a "Rural Route or other Post Office Address."

{¶ 24} Had the General Assembly intended to limit the payor's address in the paid circulator's disclosure statement to the payor's residence address, it presumably would have so defined it by addition of the term "residence," as it did with respect to the street address of subscribing electors. The General Assembly did not do that, however, and instead allowed an ambiguity, one in which the location indicated might reasonably mean either a residence address or a business address. Election laws must be strictly construed. *State ex rel. Vickers,* 97 Ohio St.3d 204, 777 N.E.2d 830, 2002-Ohio-5583, 777 N.E.2d 830. However, strict construction does not permit a court to read into a statute a limitation or distinction that the General Assembly did not adopt.

{¶ 25} If the payor's business address is sufficient for the declaration which R.C. 3519.05 requires, does that square with the purposes for which R.C. 3519.05 presumably was enacted? Further, is it satisfied here, when only a temporary lodging is involved? We believe that both must be answered in the affirmative.

{¶ 26} The payor's name and address are framed as a statement by the paid circulator, indicating from whom payment has come or will come and where that person may be found. It can function to reveal whether support or assistance has come from outside Ohio. It can also function to direct electors whose signatures are solicited to the payor for whatever inquiry or other communication the elector may wish to make. The temporary character of the location does not necessarily defeat such an inquiry, so long as the identity of the location coincides in time with when the elector's signature is solicited. In this instance, it did. Whether Mitchell might be there afterward is immaterial to the proposition. Had the Red Roof Inn rented Mitchell his room for use as a business location for some other venture on a more permanent basis, for six months, for example, there would be no question whether it was his business address through that time.

{¶ 27} The trial court rejected the part-petitions pursuant to R.C. 3519.06(D) on a finding that the address shown for John Mitchell was intended to mislead. That conclusion follows only if the address was false for purposes of R.C. 3519.05, but it is not false for that purpose when it is a valid business address where, when the representation is made, the payor may be found. That is the case here. Therefore, the trial court erred when it limited the term "address" as it appears in R.C. 3519.05, to the payor's residence address and found the part-petitions false on that account and therefore insufficient. The evidence demonstrates that

the location concerned was Mitchell's business address, which satisfies the disclosure requirements of R.C. 3519.05.

{¶ 28} The second assignment of error is sustained.

## THIRD ASSIGNMENT OF ERROR

{¶ 29} "Invalidation of state initiative petitions on the basis of information in the circulators' compensation statements violates Art. II, Sections 1B and 1G of the Ohio constitution."

## FOURTH ASSIGNMENT OF ERROR

{¶ 30} "Invalidation of state initiative petitions on the basis of information in the circulators' compensation statements violates rights of political association and speech of appellants and the circulators and signers of the petitions in violation of Art. I, Sections 3 and 11 of the Constitution of the state of Ohio and the First Amendment of the Constitution of the United States."

## FIFTH ASSIGNMENT OF ERROR

{¶ 31} "Invalidation of state initiative petitions on the basis of information in the circulators' compensation statements violates rights of political association and speech of appellants and the circulators and signers of the petitions in violation of Art. I, Sections 2 and 16 of the Constitution of the state of Ohio and the Equal Protection and Due Process Provisions of the Constitution of the United States."

{¶ 32} The third, fourth, and fifth assignments of error are rendered moot by our decision sustaining the second assignment of error. Therefore, per App.R. 12(A)(1)(c), we decline to decide them.

## Conclusion

{¶ 33} Having sustained appellants' second assignment of error, we reverse the judgment of the common pleas court from which this appeal was taken and remand the case to that court for entry of a judgment and order consistent with our opinion.

Judgment reversed.

WOLFF and FREDERICK N. YOUNG, JJ., concur.