DECISION.
{¶ 1} Respondents-appellants, The Ohio Coalition for Affordable Prescription Drugs ("the Coalition"), and William Burga, Athena Godet-Calogera, Dale Miller, and Robert Hagan ("the Committee"), sought to propose a law to the Ohio General Assembly that would have enabled Ohio residents to participate in a program allowing them to purchase prescription drugs at discounted prices. The Coalition and the Committee circulated an initiative petition proposing the Ohio Prescription Drug Fair Pricing Act.
 {¶ 2} The Coalition and the Committee filed the petition with the Secretary of State. As provided by R.C. 3519.15, the Secretary of State transmitted the part-petitions to the respective county boards of election. The Hamilton County Board of Elections (the "BOE") completed its duties and reported its findings to the Secretary of State.
 {¶ 3} The BOE initiated this action in the Hamilton County Common Pleas Court in response to a ballot-initiative protest filed by Keith Brooks, an elector from Franklin County, Ohio, ("the protestor"). Following a hearing, the court ruled that some of the part-petitions were invalid, and that Ohio's requirement for a compensation statement was constitutional. The Coalition and the Committee now appeal. The protestor has filed a cross-appeal.
 {¶ 4} The BOE has filed a motion to dismiss the appeal and the cross-appeal. The BOE argues that the appeal and the cross-appeal should be dismissed because Ohio's election statutes do not provide for appellate review of a decision of the common pleas court, and further that the decision of the common pleas court in this case was not a final appealable order. For the following reasons, we grant the BOE's motion to dismiss.
 {¶ 5} Section 3(B)(2), Article IV of the Ohio Constitution confers upon courts of appeals "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." R.C. 2505.03(A) limits the jurisdiction of courts of appeals to the review of a "final order, judgment or decree."
 {¶ 6} R.C. 2505.02(B) defines a final order. In this case, the protestor argues that the trial court's order was a final order under R.C. 2505.02(B)(1), which defines a final order as one that "affects a substantial right in an action that in effect determines the action and prevents a judgment." The Coalition and the Committee argue that the trial court's order was a final order under R.C. 2505.02(B)(2), which defines a final order as one that "affects a substantial right made in a special proceeding." Even if we were to conclude that the decision of the common pleas court is a final order, the time restrictions inherent in the initiative process would indicate that it is not appealable to the court of appeals.
 {¶ 7} The Ohio Constitution provides that the state's legislative power is vested in its general assembly, "but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote."[1] This power is known as "the initiative."[2] When a timely initiative petition proposing a law has been signed by a designated percentage of the state's electors, has been filed with the secretary of state, and has then been verified, the secretary of state must transmit the petition to the general assembly.[3]
 {¶ 8} Any initiative petition may be presented in separate parts, but each part must contain a full and correct copy of the title and the text of the proposed law.[4] Section 1g, Article II of the Ohio Constitution further provides that its provisions "shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved."[5]
 {¶ 9} "Elections belong to the political branch of the government and not to the judicial, and are not per se the subject of judicial cognizance, but are matters for political regulation."[6] "Since public elections belong to the political branch of the government, they are a matter of political regulation and questions arising in reference to elections are subject to judicial review or cognizance only in limited areas * * *. [Citations omitted.] As such, courts should be very reluctant to interfere with [elections] by the people, except to enforce rights or mandatory or ministerial duties as the statutes require."[7]
Ohio courts have held that election statutes are mandatory and require strict compliance.[8]
 {¶ 10} Anyone seeking to propose a law by an initiative petition must, by a written petition signed by a certain number of qualified electors, submit the proposed law and a summary of it to the attorney general for examination.[9] If the attorney general finds that the summary is a fair and truthful statement of the proposed law, he must so certify the petition.[10] A verified copy of the proposed law, together with the summary and the attorney general's certification, must then be filed with the secretary of state.[11]
 {¶ 11} The statutes governing the initiative process provide for an expedited review of an initiative petition following its submission to the secretary of state. The secretary of state is the chief elections officer of the state and is charged with receiving all initiative petitions and determining and certifying their sufficiency.[12]
 {¶ 12} Under R.C. 3519.15, when any initiative petition has been filed with the secretary of state, "he shall forthwith separate the part-petitions by counties and transmit such part-petitions to the boards of elections in the respective counties. The several boards shall proceedat once to ascertain whether each part-petition is properly verified, and whether the names on each part-petition are on the registration lists of such county, or whether the persons whose names appear on each part-petition are eligible to vote in such county, and to determine any repetition or duplication of signatures, the number of illegal signatures, and the omission of any details required by law. The boards shall make note opposite such signatures and submit a report to the secretary of state indicating the sufficiency or insufficiency of such signatures and indicating whether or not each part-petition is properly verified, eliminating, for the purpose of such report, all signatures on any part-petition that are not properly verified. [Emphasis added.]"
 {¶ 13} In this matter, the protestor filed with the BOE a protest against the BOE's findings made pursuant to R.C. 3519.15. As required by R.C. 3519.16, the BOE filed this action in the court of common pleas to establish the sufficiency of the signatures and of the verification thereof. The statute provides, "Such action must be brought within threedays after the protest has been filed, and the case shall be heardforthwith by a judge of such court whose decision shall be certified tothe board. [Emphasis added]."[13]
 {¶ 14} Then, the signatures that the court has found to be sufficient and the part-petitions that the court has found to be properly verified must be included with the others by the board of elections.[14]
The properly verified part-petition and the report of the board must be returned to the secretary of state no fewer than fifty days before the election, "provided that in the case of an initiated law to be presented to the general assembly the boards shall promptly check and return the petitions together with their report."[15]
 {¶ 15} If the petition is found to be insufficient based upon an insufficient number of valid signatures, the committee in charge of the circulation of the petition is allowed ten additional days to obtain additional signatures following notification by the secretary of state.[16] Then, the part-petitions of the supplementary petition that appear to the secretary of state to be properly verified, "upon receipt thereof by the secretary of state, shall forthwith beforwarded to the boards of the several counties together with the part-petitions of the original petition which have been properly verified, and shall be immediately examined and passed upon as to the validity and sufficiency of the signatures thereon by each of such boardsand returned within five days to the secretary of state with the boards' report. [Emphasis added]."
 {¶ 16} The statutory time restrictions make it clear that the General Assembly did not intend for a protracted appeals process. The statutory scheme provides for review by a common pleas court, which is required to act "forthwith."[17] Moreover, the statutes provide no directives to appellate courts with respect to the timeliness of their decisions. The failure of the General Assembly to address further appellate review would indicate that the common pleas court is the final arbiter of an appeal taken pursuant to R.C. 3519.16.
 {¶ 17} Accordingly, we conclude that the trial court's order in this case was not appealable because there was no statutory provision for an appeal, and because this court must adhere to the principle that courts should be reluctant to interfere with what is essentially a political matter.[18] We therefore dismiss these appeals.
Appeals dismissed.
Hildebrandt, P.J., and Painter, J., concur.
[1] See Section 1, Article II, Ohio Constitution.
[2] See Section 1a, Article II, Ohio Constitution.
[3] See Section 1b, Article II, Ohio Constitution.
[4] See Section 1g, Article II, Ohio Constitution.
[5] Id.
[6] State ex rel. Smart v. McKinley (1980), 64 Ohio St.2d 5, 8,412 N.E.2d 393, citing State ex rel. Gongwer v. Graves (1914),90 Ohio St. 311, 107 N.E. 1018.
[7] In re Election of Nov. 6, 1990 for Office of Attorney Gen. (1991),58 Ohio St.3d 103, 104, 569 N.E.2d 447, citing MacDonald v. Bernard
(1982), 1 Ohio St.3d 85, 86, 438 N.E.2d 410.
[8] State ex rel. Abrams v. Bachrach (1963), 175 Ohio St. 257, 259,193 N.E.2d 517.
[9] R.C. 3519.01.
[10] R.C. 3519.01(A).
[11] Id.
[12] See Cappelletti v. Celebreeze (1979), 58 Ohio St.2d 395,390 N.E.2d 829; R.C. 3501.05(K).
[13] R.C. 3519.16.
[14] Id.
[15] Id.
[16] Id.
[17] See R.C. 3519.16.
[18] See In re Election of Nov. 6, 1990, supra.