DECISION
{¶ 1} Relator, Jacob Evans, has filed this original action requesting that this court issue a writ of prohibition, or, in the alterative, a writ of mandamus against respondents, J. Kenneth Blackwell, the Ohio Secretary of State ("Secretary"); Laura Clemens, the Clerk of the Ohio House of Representatives; and David Battocletti, the Clerk of the Ohio Senate (referred to collectively with the Clerk of the Ohio House of Representatives as "Clerks"). The action concerns an initiative petition filed with the Secretary by intervenors-respondents Smoke Free Ohio, Donald McClure, Susan Jagers, and Tracey Sabetta (referred to collectively as "Smoke Free Ohio").
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for relief in prohibition and mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} With regard to the underlying merits, relator presents two objections to the magistrate's decision: (1) the magistrate's decision erroneously ejected R.C. 3519.16 from the constitutionally authorized verification process and wrongly concluded that the Secretary can ignore protests pending in the courts; and (2) the magistrate's decision, if left to stand, is actually a declaration that R.C. 3519.16 is unconstitutional, even though no constitutional challenge has been asserted in this action and no proof or evidence has been submitted in support of such a claim. Relator's objections relate solely to the writ of prohibition and do not in any way address his request for a writ of mandamus. Respondents counter relator's objections by asserting a writ of prohibition is not the appropriate procedural mechanism to provide relief to relator.
 {¶ 4} We agree with respondents that a writ of prohibition is not the appropriate remedy to address relator's grievances. The criteria for the issuance of a writ of prohibition are well-established. In order to be entitled to a writ of prohibition, relator must establish that: (1) the Secretary is about to exercise judicial or quasi-judicial power; (2) the exercise of such power is unauthorized by law; and (3) denial of the writ will cause injury to relator for which no other adequate remedy in the ordinary course of law exists. See State ex rel.White v. Junkin (1997), 80 Ohio St.3d 335, 336. The Clerks argue that relator's action in prohibition cannot lie because their act in noting the receipt of the proposed initiative from the Secretary on their respective journals was ministerial, not quasi-judicial, in nature. Likewise, the Secretary argues that, with respect to it, relator's prayer satisfies none of the requirements for a proper writ of prohibition. The Secretary maintains it is not about to exercise quasi-judicial power; its exercise of power was authorized by law, and relator has other adequate remedies at law. Smoke Free Ohio also argues that the Secretary's duties in receiving, transmitting, and certifying the initiative petitions were purely ministerial.
 {¶ 5} Insofar as respondents argue that the actions of the Secretary and Clerks were not judicial or quasi-judicial in nature, we agree. With regard to the Secretary's actions, it may only accept an initiative petition for filing that "purport[s] to contain at least the minimum number of signatures required for the submission." R.C. 3519.14. If they contain the minimum number of signatures, the Secretary then must transmit the part-petitions to the boards of elections of the respective counties. R.C. 3519.15. The boards of elections then must submit a report to the Secretary indicating the sufficiency or insufficiency of such signatures and whether or not each part-petition is properly verified. R.C. 3519.15. If, after verification under R.C. 3519.15, the petitions contain signatures of the electors sufficient to constitute three percent thereof, the Secretary then must transmit them to the General Assembly as soon as it convenes. Section 1b, Article II, Ohio Constitution.
 {¶ 6} The exercise of "quasi-judicial" power is defined as the power to hear and to determine controversies between the public and individuals that require a hearing resembling a judicial trial. State ex rel. Youngstown v. Mahoning Cty. Bd. ofElections (1995), 72 Ohio St.3d 69. In the present case, the Secretary was not about to exercise judicial authority. All of the acts the Secretary was to perform were merely administrative and not judicial acts. See, e.g., Novak v. McFaul (Oct. 26, 1999), Cuyahoga App. No. 77132 (administrative acts are not judicial acts). R.C. 3519.14 requires the Secretary to count signatures; R.C. 3519.15 requires the Secretary to transmit part-petitions to the boards of elections of each county; and Section 1b, Article II, Ohio Constitution requires the Secretary to again count signatures and then transmit the petition to the General Assembly. None of these required acts give the Secretary any power to hear and determine any controversy regarding the signatures or transmittal pursuant to any type of hearing resembling a judicial trial, nor was any type of hearing held. See State ex rel. Youngstown (no quasi-judicial act because a hearing on the decision by the county board of elections was not required, nor was a hearing conducted); State ex rel. Quick Gas,Inc. v. Council of City of Kettering (Nov. 6, 1998), Montgomery App. No. 17410 (city council's actions were not quasi-judicial because it was not required to hold an adjudicatory hearing, and no adjudicatory hearing was held). The Secretary merely discharged duties prescribed by law. See State ex rel. Sullivanv. McFaul (July 20, 2000), Cuyahoga App. No. 77570 (the mere discharge of a duty prescribed by law is not a quasi-judicial act). Any determination as to the sufficiency of the petitions is left to the board of elections under R.C. 3519.15 and the judicial system pursuant to a protest under R.C. 3519.16. The above-cited provisions demonstrate that the General Assembly limited the role of the Secretary to non-judicial acts in this process. Therefore, relator has failed to demonstrate that the Revised Code grants the Secretary any quasi-judicial authority regarding the petition process. Accordingly, relief in prohibition would not be appropriate.
 {¶ 7} Similarly, with regard to the Clerks, relator cannot demonstrate that the Clerks have undertaken any quasi-judicial action. Prohibition will not issue to prevent a public entity from exercising ministerial authority. McAuley v. Smith (1998),82 Ohio St.3d 393, 396. Here, in formally receiving the proposed law from the Secretary and maintaining their journal entries of receipts of transmittal, the Clerks were merely carrying out administrative and ministerial acts pursuant to their statutory duties. See, e.g., State ex rel. Cundiff v. Portage Cty. Bd. ofElections (Apr. 29, 1994), Portage App. No. 94-P-0023 (the receipt of referendum petitions by a board member or clerk from township resident voters is merely a ministerial act). Further, in performing these duties, the Clerks made no judicial or quasi-judicial determinations as to any controversy, and clearly did not adjudicate any dispute between any parties. The various protests remain pending in their respective county common pleas courts, and the Clerks have done nothing to impede those cases from proceeding to their end. Therefore, relief in prohibition would also not be appropriate with respect to the Clerks. For these reasons, we overrule relator's objections.
 {¶ 8} With regard to relator's writ for mandamus originally requested in his complaint, as mentioned previously, relator presents no objections to the magistrate's denial of such. In his objections, relator does not address or mention the denial of the writ of mandamus and requests only that this court issue a writ of prohibition. Thus, as it appears as though relator has abandoned his claim based upon mandamus relief, we deny it.
 {¶ 9} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections. We deny relator's request for a writ of prohibition and writ of mandamus, albeit for different reasons than those discussed by the magistrate.
Objections overruled; writ of prohibition denied; and writ ofmandamus denied.
McGrath and Deshler, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C)[NAF1], Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jacob Evans, : Relator, : :
: v. : No. 06AP-6 :
J. Kenneth Blackwell, Secretary of State : (REGULAR CALENDAR) of Ohio, Laura Clemens, Clerk of the : Ohio House of Representatives and : David Battocletti, Clerk of the Ohio : Senate, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 16, 2006 Bricker Eckler LLP, Quintin F. Lindsmith, Anne Marie Sferra,Jennifer A. Flint and Vladimir P. Belo, for relator.
Chester, Willcox Saxbe LLP, Donald C. Brey, Elizabeth J.Watters, Timothy S. Horton and Deborah A. Scott, for respondent J. Kenneth Blackwell.
Jim Petro, Attorney General, Sharon A. Jennings and HollyJ. Hunt, for respondents Laura Clemens and David Battocletti.
Law Offices of Donald J. McTigue, Donald J. McTigue, Robert A.Beattey, Jr., and Mark A. McGinnis, for Intervenor-Respondents Donald McClure, Susan Jagers, Tracy Sabetta and SmokeFreeOhio.
 IN PROHIBITION IN MANDAMUS {¶ 10} In this original action, relator, Jacob Evans, requests that this court issue a writ of prohibition or, in the alternative, a writ of mandamus against respondents the Ohio Secretary of State, and the Clerks of the Ohio House of Representatives and the Ohio Senate. This action concerns an initiative petition filed with the Secretary of State by intervenors-respondents Donald McClure, Susan Jagers, and Tracey Sabetta.
Findings of Fact:
The Parties
 {¶ 11} 1. Relator, Jacob Evans, is a taxpayer and a duly qualified and registered elector of the state of Ohio.
 {¶ 12} 2. Respondent J. Kenneth Blackwell is the Ohio Secretary of State ("Secretary") and, pursuant to R.C. 3501.34, is the chief elections officer of the state of Ohio.
 {¶ 13} 3. Respondent Laura Clemens is the Clerk of the Ohio House of Representatives and respondent David Battocletti is the Clerk of the Ohio Senate ("respondent clerks").
 {¶ 14} 4. Intervenors Donald McClure, Susan Jagers, and Tracey Sabetta are members of the committee ("the committee") responsible for a state initiative petition proposing a law styled "The Smoke Free Workplace Act." SmokeFreeOhio is a coalition of nonprofit organizations that drafted the proposed law.
The Timeline of Relevant Events
 {¶ 15} 5. On November 17, 2005, the committee filed an initiative petition with the Secretary. The petition contained approximately 167,626 signatures from all 88 Ohio counties.
 {¶ 16} 6. On or about December 1, 2005, the Secretary transmitted part-petitions to the county boards of elections ("BOEs"), along with directive 2005-33 which enclosed instructions for the BOEs to follow in determining the validity or invalidity of the part-petitions and/or individual signatures thereon.
 {¶ 17} 7. Pursuant to R.C. 3519.15, the BOEs reviewed the part-petitions and then submitted their respective reports to the Secretary.
 {¶ 18} 8. On December 28, 2005, pursuant to R.C. 3519.16, the Secretary notified the committee in writing that the petition contained 117,026 valid signatures, and that signatures from 59 of the 88 counties met or exceeded 1.5 percent of the total number of votes cast for governor in the respective counties in the last gubernatorial election and that the results indicated a sufficient number of valid signatures for the proposed law to be transmitted to the General Assembly.
 {¶ 19} 9. The total number of votes cast for the office of governor at the last gubernatorial election, held on November 5, 2002, was 3,228,992; three percent of that number is 98,870.
 {¶ 20} 10. By letter dated December 28, 2005, the Secretary certified to respondent clerks that the petition met the requirements of Sections 1b and 1g, Article II, Ohio Constitution. On that date, the Secretary transmitted to respondent clerks the full text and summary of the proposed law for the General Assembly's consideration at its 2006 session.
 {¶ 21} 11. Affidavits filed by relator and by the Secretary undisputedly show that, prior to his December 28, 2005 certification to the General Assembly, the Secretary was aware that some protests had been filed pursuant to R.C. 3519.16. (See Affidavit of Keith A. Scott, filed by the Secretary and Affidavit of Terrence O'Donnell, filed by relator.)
 {¶ 22} 12. The General Assembly convened its second regular session on Monday, January 3, 2006. On January 3, 2006, respondent clerks journalized the transmittal by the Secretary of the proposed law.
 {¶ 23} 13. On January 3, 2006, relator, Jacob Evans, filed this original action.
 {¶ 24} 14. On March 14, 2006, in this action, the parties filed a supplemental stipulation of facts and evidence which informs this court that relator has filed protests in 34 counties. In 31 of the counties, the Secretary has moved to intervene in the common pleas court action and has also moved to transfer venue to the Franklin County Court of Common Pleas. Three of the Secretary's motions were withdrawn pursuant to the parties' agreement. As of March 14, 2006, at least 13 common pleas courts have granted the Secretary's motion to intervene and to transfer venue to the Franklin County Court of Common Pleas. In the remaining counties, the Secretary's motion to intervene and to transfer venue has not been opposed. As of March 14, 2006, counsel are aware of only one county clerk of courts (Auglaize County) that has actually transferred the record to the Franklin County Court of Common Pleas.
Conclusions of Law:
 {¶ 25} Relator's request for relief in prohibition or mandamus is premised upon two propositions derived from relator's analysis of the Ohio Constitution, supplementing statutes, and case law: (1) that the Secretary is prohibited by law from certifying the proposed law to the General Assembly until, pursuant to R.C. 3519.16, the various protest actions have concluded and the BOEs have again returned to the Secretary the properly verified part-petitions together with their reports (second reports of BOEs); and (2) that the Secretary was prohibited by law from certifying the proposed law to the General Assembly for consideration at its legislative session beginning January 3, 2006 because, allegedly, Section 1b, Article II, Ohio Constitution, requires that all of the first reports of the BOEs be returned to the Secretary "not less than ten days prior to the commencement" of the legislative session to which the Secretary transmits the initiative petition.
 {¶ 26} Because the magistrate disagrees with both propositions advanced by relator, it is the magistrate's decision that this court deny relator's request for relief in prohibition or mandamus.
 {¶ 27} In order to obtain a writ of prohibition, relator must establish that: (1) respondent Secretary is about to exercise judicial or quasi-judicial power; (2) the exercise of that power is unauthorized by law; and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. State ex rel. Thurn v. Cuyahoga Cty. Bd. ofElections (1995), 72 Ohio St.3d 289, 291.
 {¶ 28} Here, relator alleges that the Secretary has usurped the quasi-judicial authority of the BOEs and the judicial authority of the common pleas courts by prematurely certifying the proposed law to the General Assembly before the common pleas courts have certified their decisions to the BOEs. According to relator, the Secretary has engaged in an unlawful judicial or quasi-judicial determination that all the protests will fail and that the committee has gathered a sufficient number of valid signatures.
 {¶ 29} There is authority to support the proposition that this court has plenary power in prohibition not only to prevent any excess of the respondent but to correct or vacate the results or order of the respondent. State ex rel. Ohioans for WildlifeConservation v. Taft (Sept. 16, 1998), Franklin App. No. 98AP-1008 (this court issued a writ of prohibition ordering the respondent Secretary of State to place the proposed law supported by an initiative petition upon the November 3, 1998 ballot).
 {¶ 30} In order to grant a writ of mandamus, a court must find that relator has a clear legal right to the relief prayed for; that the respondent is under a clear legal duty to perform the requested act; and that relator has no plain and adequate remedy at law. State ex rel. Hodges v. Taft (1992),64 Ohio St.3d 1, 3. Because it is the function of a writ of mandamus to compel action, presumably, relator would request that a writ of mandamus order the Secretary to retract his certification of the proposed law to the General Assembly. See Hodges, at 2.
 {¶ 31} Section 1, Article II, Ohio Constitution vests the legislative power of the state in a General Assembly consisting of a Senate and House of Representatives, but reserves to the people the right to propose, adopt, or reject legislation and constitutional amendments by initiative and referendum. Hodges,
4-5. The grant to the General Assembly is a delegated power. Id. Initiative and referendum are reserved powers. Id. They comprehend all of the sovereign power of legislation not thus delegated. Id. The powers of initiative and referendum should be liberally construed to effectuate the rights reserved. Id.
 {¶ 32} Effective October 1, 1912, Ohio adopted Sections 1b
and 1g, Article II, Ohio Constitution. Those two sections of the Ohio Constitution provide for the initiative petition at issue here. Section 1b remains today as it was adopted in 1912. It provides, in pertinent part:
When at any time, not less than ten days prior to the commencement of any session of the General Assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the General Assembly as soon as it convenes. If said proposed law shall be passed by the general assembly, either as petitioned for or in an amended form, it shall be subject to the referendum. If it shall not be passed, or if it shall be passed in an amended form, or if no action shall be taken thereon within four months from the time it is received by the general assembly, it shall be submitted by the secretary of state to the electors for their approval or rejection at the next regular or general election, if such submission shall be demanded by supplementary petition verified as herein provided and signed by not less than three per centum of the electors in addition to those signing the original petition, which supplementary petition must be signed and filed with the secretary of state within ninety days after the proposed law shall have been rejected by the general assembly or after the expiration of such term of four months, if no action has been taken thereon, or after the law as passed by the General Assembly shall have been filed by the governor in the office of the secretary of state. * * *
 {¶ 33} Section 1g, however, was amended effective January 1, 1972, and again amended effective June 12, 1978. The current version of Section 1g provides in pertinent part:
Any initiative, supplementary, or referendum petition may be presented in separate parts but each part shall contain a full and correct copy of the title, and text of the law, section or item thereof sought to be referred, or the proposed law or proposed amendment to the constitution. Each signer of any initiative, supplementary, or referendum petition must be an elector of the state and shall place on such petition after his name the date of signing and his place of residence. * * * To each part of such petition shall be attached the statement of the circulator, as may be required by law, that he witnessed the affixing of every signature. The petition and signatures upon such petitions shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition. * * * Upon all initiative, supplementary, and referendum petitions provided for in any of the sections of this article, it shall be necessary to file from each of one-half of the counties of the state, petitions bearing the signatures of not less than one-half of the designated percentage of the electors of such county. * * *
 {¶ 34} The versions of Section 1g in effect prior to June 12, 1978 did not provide for the statement of a circulator, but instead provided that: "To each part of such petition shall be attached the affidavit of the person soliciting the signatures to the same." Immediately following the provisions for the affidavit, the pre-June 12, 1978 versions of Section 1g stated:
* * * The petition and signatures upon such petitions, so verified, shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition. * * *
R.C. 3519.15 states:
Whenever any initiative or referendum petition has been filed with the secretary of state, he shall forthwith separate the part-petitions by counties and transmit such part-petitions to the boards of elections in the respective counties. The several boards shall proceed at once to ascertain whether each part-petition is properly verified, and whether the names on each part-petition are on the registration lists of such county, or whether the persons whose names appear on each part-petition are eligible to vote in such county, and to determine any repetition or duplication of signatures, the number of illegal signatures, and the omission of any necessary details required by law. The boards shall make note opposite such signatures and submit a report to the secretary of state indicating the sufficiency or insufficiency of such signatures and indicating whether or not each part-petition is properly verified, eliminating, for the purpose of such report, all signatures on any part-petition that are not properly verified.
In determining the sufficiency of such a petition, only the signature of those persons shall be counted who are electors at the time the boards examine the petition.
R.C. 3519.16 states:
The circulator of any part-petition, the committee interested in the petition, or any elector may file with the board of elections a protest against the board's findings made pursuant to section 3519.15 of the Revised Code. Protests shall be in writing and shall specify reasons for the protest. Protests for all initiative and referendum petitions other than those to be voted on by electors throughout the entire state shall be filed not later than four p.m. of the sixty-fourth day before the day of the election. Once a protest is filed, the board shall proceed to establish the sufficiency or insuffic the original and supplementary petitions, properlyiency of the signatures and of the verification of those signatures in an action before the court of common pleas in the county. The action shall be brought within three days after the protest is filed, and it shall be heard forthwith by a judge of that court, whose decision shall be certified to the board. The signatures that are adjudged sufficient or the part-petitions that are adjudged properly verified shall be included with the others by the board, and those found insufficient and all those part-petitions that are adjudged not properly verified shall not be included.
The properly verified part-petitions, together with the report of the board, shall be returned to the secretary of state not less than fifty days before the election, provided that, in the case of an initiated law to be presented to the general assembly, the boards shall promptly check and return the petitions together with their report. The secretary of state shall notify the chairperson of the committee in charge of the circulation as to the sufficiency or insufficiency of the petition and the extent of the insufficiency.
If the petition is found insufficient because of an insufficient number of valid signatures, the committee shall be allowed ten additional days after the notification by the secretary of state for the filing of additional signatures to the petition. The part-petitions of the supplementary petition that appear to the secretary of state to be properly verified, upon their receipt by the secretary of state, shall forthwith be forwarded to the boards of the several counties together with the part-petitions of the original petition that have been properly verified. They shall be immediately examined and passed upon as to the validity and sufficiency of the signatures on them by each of the boards and returned within five days to the secretary of state with the report of each board. No signature on a supplementary part-petition that is the same as a signature on an original part-petition shall be counted. The number of signatures in both the original and supplementary petitions, properly verified, shall be used by the secretary of state in determining the total number of signatures to the petition that the secretary of state shall record and announce. If they are sufficient, the amendment, proposed law, or law shall be placed on the ballot as required by law. If the petition is found insufficient, the secretary of state shall notify the committee in charge of the circulation of the petition.
 {¶ 35} R.C. 3519.15 requires the Secretary to forthwith transmit the part-petitions to the county BOEs whenever an initiative petition is filed with the Secretary. Following completion of the verification procedure set forth at R.C.3519.15, the BOEs are commanded by statute to submit a report to the Secretary indicating the sufficiency or insufficiency of the signatures and whether each part-petition is properly verified. The reports of the BOEs to the Secretary, pursuant to R.C.3519.15, shall be referred to herein as the first reports of the BOEs.
 {¶ 36} R.C. 3519.16 provides that once a protest is filed, the county BOE shall proceed to establish the sufficiency or insufficiency of the signatures and the verification of those signatures in an action brought before the common pleas court of the county. The action shall be heard forthwith by a judge of the common pleas court whose decision shall be certified to the board. R.C. 3519.16 provides that the properly verified part-petition, together with the report of the county BOE, shall be returned to the Secretary. The reports of the BOEs, pursuant to R.C. 3519.16, shall be referred to herein as the second reports of the BOEs.
 {¶ 37} The magistrate's analysis begins with the recognition that the statutes supplementing the constitutional provisions must be interpreted in a manner consistent with the constitutional provisions. The language of the Constitution guides any necessary interpretation of the statutes. Thus, R.C.3519.16 must be interpreted in a manner consistent with the language of Sections 1b and 1g, Article II, Ohio Constitution. In short, the Constitution always trumps the statute.
 {¶ 38} The Secretary's constitutional duty to transmit a proposed law to the General Assembly for consideration is set forth in the very first sentence of Section 1b, Article II, Ohio Constitution. It directs the Secretary to transmit the proposed law to the General Assembly as soon as it convenes when a petition, signed by three per centum of the electors, has been filed with the Secretary "not less than ten days prior to the commencement" of the legislative session and "verified as herein provided."
 {¶ 39} The "verified as herein provided" language of Section 1b and relator's interpretation of R.C. 3519.16 are the key components of relator's claim that the Secretary was prohibited by law from certifying the proposed law to the General Assembly until the protest actions have concluded and the second BOE reports are received by the Secretary.
 {¶ 40} According to relator, the petition is not "verified as herein provided" within the meaning of Section 1b until, pursuant to R.C. 3519.16, the second BOE reports are transmitted to the Secretary following the adjudications by the various common pleas courts of the counties in which protest actions have been filed.
 {¶ 41} Relator's argument heavily relies upon the following paragraph of R.C. 3519.16:
The properly verified part-petitions, together with the report of the board, shall be returned to the secretary of state not less than fifty days before the election, provided that, in the case of an initiated law to be presented to the general assembly, the boards shall promptly check and return the petitions together with their report. The secretary of state shall notify the chairperson of the committee in charge of the circulation as to the sufficiency or insufficiency of the petition and the extent of the insufficiency.
 {¶ 42} According to relator, pursuant to the above-noted paragraph of R.C. 3519.16, the Secretary is not authorized to notify the chairperson of the committee as to the sufficiency or insufficiency of the petition until the second BOE reports are transmitted to the Secretary. Because the Secretary has in fact notified the committee that the petition is supported by a sufficient number of signatures in the absence of his receipt of any second BOE reports, relator concludes that the Secretary has violated R.C. 3519.16, and that he has unlawfully certified the proposed law to the General Assembly.
 {¶ 43} Parenthetically, relator's argument seems to presume that proper notification of the committee as to the sufficiency of the signatures pursuant to R.C. 3519.16 is a legal prerequisite to the Secretary's Section 1b duty to transmit the proposed law to the General Assembly.
 {¶ 44} The magistrate disagrees with relator's conclusion that Section 1b's requirement that the petition be "verified as herein provided" encompasses the statutory procedures relating to the protest actions filed under R.C. 3519.16.
 {¶ 45} It should again be observed that the protest action is solely a creature of statute, i.e., R.C. 3519.16. Thus, R.C.3519.16 derives its authority only to the extent that it can be interpreted as consistent with the last sentence of Section 1g, Article II, Ohio Constitution:
* * * The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation but in no way limiting or restricting either such provisions or the powers herein reserved.
 {¶ 46} Based upon the above analysis, the issue presented here is whether relator's proposed inclusion of R.C. 3519.16's protest action procedures into Section 1b's verification requirement unduly limits or restricts Section 1b's verification requirement in violation of Section 1g's prohibition against the passage of laws limiting or restricting the provisions of Sections 1b and 1g.
 {¶ 47} Analysis of the issue cannot proceed in the absence of a review of Cappelletti v. Celebrezze, Jr. (1979),58 Ohio St.2d 395.
 {¶ 48} In Cappelletti, the relators comprised a committee to represent the petitioners on an initiative petition filed on December 22, 1978, with the respondent Secretary of State. The petition proposed certain statutory changes and contained in excess of the signatures which, if valid, would constitute more than three per centum of the electors. The Secretary of State submitted the part-petitions directly to the county BOEs pursuant to R.C. 3519.15. Pursuant to R.C. 3519.16, protest actions were filed in four counties.
 {¶ 49} In Cappelletti, the relators filed a mandamus action against the Secretary of State claiming that he had a clear legal duty to submit the proposed law to the General Assembly when it next convened without regard to the determinations of the BOEs under R.C. 3519.15.
 {¶ 50} In Cappelletti, the relators' claim was premised upon the so-called "presumption of sufficiency" contained in the language of Section 1g, Article II, Ohio Constitution. The relators had argued that the Section 1g presumption of sufficiency eliminates the verification procedures set forth under R.C. 3519.15. The Cappelletti court disagreed, stating:
* * * Verification and the determination of the status of the signers can best be, and is by statute to be, performed by sending the petitions purporting upon their face to contain more than the required number of signatures, affixed and certified as explicitly required by constitutional directions contained in that article, to the county boards of elections to be viewed together with the records there kept for the purpose of assisting the Secretary of State in arriving at his verification of the signatures and his determination of the qualifications as elector of the individual resident signers.
Id. at 397.
 {¶ 51} In effect, the Cappelletti court found that the Section 1g presumption of sufficiency cannot arise until the R.C.3519.15 verification procedures are accomplished.
 {¶ 52} Interpreting the first sentence of Section 1b, ArticleII, Ohio Constitution, the Cappelletti court stated:
The order in Section 1B of Article II of the Ohio Constitution directing the Secretary of State to transmit a petition proposing a law to the General Assembly as soon as it convenes is triggered only when that petition is both filed with, and found to be sufficient by, the Secretary of State. The phrase, "verified as herein provided," found in Section 1B, is a phrase used throughout Article II of the Constitution. We conclude that this phrase requires the Secretary of State as chief elections officer to first determine that the petition contains the purported signatures of three percentum of the electors of the state, for that requirement is fundamental to the constitutional reservation of the right of initiative to the people. * * *
Id. at 396.
 {¶ 53} Recognizing the issue presented here, but refusing to determine it, the Cappelletti court stated:
Although we are disturbed by the delays which it is alleged are being occasioned by the procedure legislatively authorized by R.C. 3519.16, we reserve any judgment as to whether this statute would pass constitutional muster if properly attacked. * * *
Id. at 398.
 {¶ 54} Thus, under Cappelletti, Section 1b's verification prerequisite includes the R.C. 3519.15 verification procedures in order to trigger a duty upon the Secretary to transmit to the General Assembly a proposed law of an initiative petition. However, the Cappelletti court reserved any determination of whether the protest procedures under R.C. 3519.16 must be included in order to trigger the Secretary's duty.
 {¶ 55} In the magistrate's view, inclusion of the R.C.3519.16 protest procedures into Section 1b's verification prerequisite contravenes the very letter and spirit of the ten-day provision set forth in the opening sentence of Section 1b:
When at any time, not less than ten days prior to the commencement of any session of the General Assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the General Assembly as soon as it convenes. * * *
 {¶ 56} The opening sentence of Section 1b readily discloses that the Ohio Constitution contemplates a time frame in which an initiative petition can trigger the transmittal of a proposed law to the General Assembly if the petition is filed with the Secretary not less than ten days prior to the commencement of any session of the General Assembly.
 {¶ 57} Yet, the evidence before this court and a review of cases involving adjudications of R.C. 3519.16 protest actions clearly shows that the ten-day provision set forth in Section 1b would be rendered meaningless if this court were to adopt relator's argument that the Secretary is prohibited from certifying the proposed law to the General Assembly until the various protest actions have concluded.
 {¶ 58} Here, the committee filed its initiative petition with the Secretary on November 17, 2005, 47 days prior to the commencement of the legislative session beginning January 3, 2006 and, thus, 37 days earlier than required under the 10-day provision of Section 1b, Article II, Ohio Constitution. Yet, if relator's proposition is accepted here, the Secretary would, in all probability, be unable to transmit the proposed law until the January 2007 legislative session, thus delaying for one year the placing of the proposed law at the general election.
 {¶ 59} Illustrative of the practical effect of adopting relator's position are the multitude of Ohio appellate decisions that finally adjudicated a multitude of R.C. 3519.16 protest actions filed in January 2003 with respect to an initiative petition proposing the Ohio Prescription Drug Fair Pricing Act. Reviewing the judgments of the various common pleas courts, those appellate decisions were rendered during the months of October, November and December 2003. In re Protest of Brooks,154 Ohio App.3d 739, 2003-Ohio-5241 (decided Oct. 1, 2003); In reProtests filed with Summit Cty. Bd. of Elections, Summit App. No. 21526, 2003-Ohio-5610 (decided Oct. 22, 2003); In re Protestof Brooks, Stark App. No. 2003CA00130, 2003-Ohio-5765 (decided Oct. 27, 2003); In re Protest of Brooks, 155 Ohio App.3d 370,2003-Ohio-6348 (decided Nov. 24, 2003); In re Protest ofBrooks, 155 Ohio App.3d 384, 2003-Ohio-6525 (decided Dec. 5, 2003); In re Protest of Brooks, Shelby App. No. 17-03-17,2003-Ohio-6990 (decided Dec. 22, 2003); In re Protest ofBrooks, Hamilton App. No. C-030273, 2003-Ohio-7152 (decided Dec. 30, 2003).
 {¶ 60} Thus, based upon the multitude of appellate court decisions involving the initiative petition proposing the Ohio Prescription Drug Fair Pricing Act, it can be readily seen that the protest action procedure took some 11 months from the dates the protest actions were filed in January 2003 to the conclusion of the various appellate court decisions in December 2003.
 {¶ 61} Apparently, unlike the factual scenario here, the Secretary did not move to intervene and to transfer venue to the Franklin County Court of Common Pleas in the various protest actions involving the initiative petition proposing the Ohio Prescription Drug Fair Pricing Act. However, even if the transfer of the 31 protest actions to the Franklin County Court of Common Pleas ultimately proves to more expeditiously resolve the protest actions involved here, it is clear that the time required to reach a final resolution will be substantial.
 {¶ 62} It is clear from a plain reading of Sections 1b and1g, Article II, Ohio Constitution that the Ohio Constitution contemplates a timeline in which it can be reasonably expected that the proposed law of an initiative petition filed with the Secretary not less than ten days prior to the commencement of any session of the General Assembly can be placed on the ballot at the next regular or general election following commencement of that legislative session if the petitioners can obtain the per centum of valid signatures required by the Constitution on both the initial petition and the supplementary petition.
 {¶ 63} It is also clear to this magistrate that relator's first proposition — that the Secretary is prohibited by law from certifying the proposed law to the General Assembly until the R.C. 3519.16 protest procedure is exhausted and the second reports from the BOEs have been returned to the Secretary — is inconsistent with the timeline set forth at Section 1b, ArticleII, Ohio Constitution.
 {¶ 64} As previously noted, the powers of initiative and referendum should be liberally construed to effectuate the rights reserved. Hodges, supra, at 5. Thus, to the extent that R.C.3519.16 creates ambiguity with respect to the constitutional rights reserved to the people, the ambiguity must be resolved in a manner that effectuates the right to bring an initiative petition.
 {¶ 65} Accordingly, based upon the foregoing analysis, the magistrate holds that the Secretary was not prohibited by law from certifying the proposed law to the General Assembly until the R.C. 3519.16 protest action procedures are exhausted and the second reports of the BOEs are returned to the Secretary.
 {¶ 66} As previously noted, relator's second proposition is that the Secretary was prohibited by law from certifying the proposed law to the General Assembly for consideration at its legislative session beginning January 3, 2006. Relator's second proposition is premised upon relator's interpretation of the opening sentence of Section 1b, Article II, Ohio Constitution, and the affidavit of Keith A. Scott, an attorney employed in the Secretary's general counsel division. The affidavit was filed by the Secretary in this action on February 15, 2006. In his affidavit, Mr. Scott avers:
* * * On December 28, 2005, the [Secretary's] Elections Division received the last of the 88 BOE certifications of the SmokeFreeOhio part-petitions. Receipt of these 88 certifications served as official notification to the [Secretary] that the BOEs had completed their process of determining the official tally of valid petition signatures contained in all of the part-petitions that were circulated in the respective counties.
 {¶ 67} In further support of his second proposition, relator also relies upon the Secretary's directive 2005-33 issued to the BOEs on December 1, 2005:
You must review and return these part-petitions to thisoffice, together with your certification, no later than December22, 2005. My office as required by Article II § 1b of the Ohio Constitution is required to transmit the statute proposed by the petition to the General Assembly by the first day of session, which is January 3, 2006.
(Emphasis sic.)
 {¶ 68} According to relator, the Secretary in this action, made a "stunning admission" that he violated the ten-day provision of Section 1b, Article II, Ohio Constitution. (Relator's reply brief in response to the Secretary's brief, at 1.) Relator seems to suggest incorrectly that the Cappelletti
court held that the opening sentence of Section 1b requires that the Secretary receive the first reports of the BOEs under R.C.3519.15 "not less than ten days prior to the commencement of any session of the General Assembly" in order to trigger the Secretary's duty to transmit a petition proposing a law to that session of the General Assembly. Contrary to relator's suggestion, Cappelletti does not so hold, nor does it even suggest such a holding.
 {¶ 69} According to relator, because the Secretary had admitted herein, through the affidavit of Keith A. Scott, that he did not receive all of the first BOE reports until December 28, 2005, six days before the commencement of the legislative session beginning January 3, 2006, he was prohibited from transmitting the petition proposing the law during that session. Relator cites to Hodges, supra, but Hodges does not support relator's proposition.
 {¶ 70} In Hodges, on January 6, 1992, the Secretary of State transmitted to the presiding officers of the Senate and House of Representatives a letter stating that an initiative petition satisfied the minimum valid signature requirements of Sections 1b and 1g, Article II, Ohio Constitution. On January 6, 1992, the relators, who were Ohio electors and taxpayers, filed a mandamus action requesting that the Supreme Court of Ohio order the Secretary of State to retract his certification of the proposed law and to refrain from transmitting it until the next legislative biennium in January 1993. In Hodges, the relators argued that a legislative "session" within the meaning of the opening sentence of Section 1b, Article II, Ohio Constitution, is a biennium. In rejecting the relators' claim, the Hodges court explained that each General Assembly meets in two regular sessions. The first regular session convenes when each House is called to order by its respective presiding officer on the first Monday in January in the odd-numbered year. The second regular session convenes automatically on the same date of the following year. Hodges, at 10.
 {¶ 71} The Hodges court further explained:
For purposes of Section 1b, Article II, requiring the Secretary of State to transmit his certification of a proposed law to the General Assembly "as soon as it convenes," that event occurs at the commencement of the "first regular session" or the "second regular session" following the date on which the petitions proposing the law are filed with the Secretary of State. An exception is made for an initiative proposal filed with the secretary within ten days prior to the commencement of either regular session; the secretary must withhold his certification until the regular session next following.
Id.
 {¶ 72} Thus, under Hodges, had the committee in the instant case filed its initiative petition within ten days prior to the commencement of the legislative session beginning January 3, 2006, the Secretary would have been required to withhold his certification. However, that scenario did not happen here and, thus, Hodges does not support relator's proposition.
 {¶ 73} Again, the opening sentence of Section 1b, Article II, Ohio Constitution states:
When at any time, not less than ten days prior to the commencement of any session of the General Assembly, there shall have been filed with the secretary of state a petition signed by three pre centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the General Assembly as soon as it convenes.
 {¶ 74} Based upon a plain reading of the opening sentence of Section 1b, there is clearly no requirement that the verification of the initiative petition be accomplished "not less than ten days prior to the commencement" of the legislative session to which the Secretary shall transmit the petition proposing a law.
 {¶ 75} What is the obvious purpose of the ten-day provision of Section 1b? Its obvious purpose is to permit the verification of the petition prior to the commencement of the next legislative session.
 {¶ 76} Perhaps it can be argued that ten days is an impracticable amount of time within which an initiative petition proposing a law can be verified under R.C. 3519.15, although no such argument has been made in this action. However, the impracticability of accomplishing verification within ten days should an initiative petition be filed, for example, 11 days prior to the commencement of the next legislative session, cannot alter the purpose of the ten-day provision which is to permit verification prior to the commencement of the next legislative session.
 {¶ 77} Thus, based upon the foregoing analysis, the magistrate holds that the Secretary was not prohibited by law from certifying the proposed law to the General Assembly at its legislative session beginning January 3, 2006, even though all the first reports of the BOEs had not been received by the Secretary "not less than ten days prior to the commencement" of the legislative session beginning January 3, 2006.
 {¶ 78} Accordingly, it is the magistrate's decision that this court deny relator's request for relief in prohibition and mandamus.