[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 204.]

THE STATE EX REL. VICKERS ET AL. *v.* SUMMIT COUNTY COUNCIL ET AL.

[Cite as *State ex rel. Vickers v. Summit Cty. Council*, 2002-Ohio-5583.]

*Elections—Mandamus sought to compel Summit County Council and Summit County Board of Elections to place a proposed charter amendment establishing term limits for certain county offices on the November 5, 2002 election ballot—Writ denied, when.*

(No. 2002-1650—Submitted October 15, 2002—Decided October 21, 2002.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶1} Relators, Kristina L. Vickers, Brian K. Hatfield, and Bryan C. Williams, are members of a committee formed to file a petition proposing an amendment to the Charter of Summit County, Ohio. The amendment would establish term limits for certain county offices. The petition contained the following election-falsification statement in boldface capital letters below the circulator statement: "THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS OR A FINE OF NOT MORE THAN $1,000, OR BOTH."

{¶2} On September 5, 2002, relators submitted their petition to respondent Summit County Council. The petition consisted of 709 parts and contained 18,793 signatures. In the petition, relators did not specifically request that the proposed charter amendment be placed on the November 5, 2002 election ballot. When it received the petition, the county council sent the petition to respondent Summit County Board of Elections to determine whether the petition contained sufficient signatures.

{¶3} On September 11, 2002, the board of elections returned the petition to the county council. The board examined 15,678 of the 18,793 signatures and concluded that the petition contained 13,053 valid signatures, which exceeded the amount required by Section 4, Article X of the Ohio Constitution and Section 5.06 of the Summit County Charter for placement on the ballot. The board further noted that the petition did not contain the appropriate statutory election-falsification statement, but that the applicability of the statutory requirement to the charter amendment process might be in question. The petition contained an outdated election-falsification statement.

{¶4} The county council did not discuss the proposed charter amendment until its September 16, 2002 meeting, and it tabled the matter at a September 23, 2002 committee meeting.

{¶5} On September 25, 2002, relators filed a complaint in this court for a writ of mandamus to compel the county council to "forthwith by resolution submit the proposed charter amendment to the voters for decision" and to order the county council and the board of elections to "place the issue of whether or not to adopt the proposed charter amendment on the November 5, 2002, general election ballot." Respondents filed an answer, and the parties filed evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9).

{¶6} This cause is now before the court on the merits.

{¶7} Relators seek a writ of mandamus to compel the county council and the board of elections to place the proposed charter amendment on the November 5, 2002 election ballot.

{¶8} Section 4, Article X of the Ohio Constitution provides for the submission of county charter amendments by the county legislative authority upon petition of eight percent of county electors:

{¶9} "The Legislative authority (which includes the Board of County Commissioners) of any county may by a two-thirds vote of its members, or upon

2

petition of eight per cent of the electors of the county as certified by the election authorities of the county shall forthwith, by resolution submit to the electors of the county the question, 'Shall a county charter commission be chosen?' * * *

**{¶10}** "* * *

**{¶11}** "* * * Amendments to a county charter or the question of the repeal thereof may also be submitted to the electors of the county in the manner provided in this section for the submission of the question whether a charter commission shall be chosen, to be voted upon at the first general election occurring not sooner than sixty days after their submission."

**{¶12}** Relators contend that based upon Section 4, the county council should have passed a resolution by September 6, 2002, to submit the proposed amendment to county voters on the November 5, 2002 general election ballot.

Laches

**{¶13}** We have consistently required relators in election cases to act with the utmost diligence. *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 479, 764 N.E.2d 971. For election cases, laches is not an affirmative defense, and relators have the burden of proving that they acted with the requisite diligence. *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, at ¶ 26; *State ex rel. Hills Communities, Inc. v. Clermont Cty. Bd. of Elections* (2001), 91 Ohio St.3d 465, 467, 746 N.E.2d 1115.

**{¶14}** Relators did not satisfy their burden. They waited to file this action 19 days after September 6, 2002, which was the last date under Section 4, Article X of the Ohio Constitution for the county council to place the issue on the November 5, 2002 election ballot. See *State ex rel. Demaline v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 523, 526-527, 740 N.E.2d 242, quoting *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724

N.E.2d 775 (" 'we have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case' " [emphasis in *Landis*]).

{¶15} The facts here are similar to those in *State ex rel. Carberry v. Ashtabula* (2001), 93 Ohio St.3d 522, 524, 757 N.E.2d 307, and *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 718 N.E.2d 415. In *Carberry*, we denied a writ of mandamus to compel a city council to submit proposed charter amendments to the electorate on the November 2001 general election ballot because of laches. The relators in *Carberry* delayed 16 days from the city council's September 4 decision not to place the issues on the November 2001 ballot to file their mandamus action on September 20. 93 Ohio St.3d at 524, 757 N.E.2d 307.

{¶16} In *Valore*, the relator waited 16 days from a board's September 1 decision not to certify his candidacy on the November 1999 election ballot before he filed his mandamus action on September 17 to compel certification. 87 Ohio St.3d at 146, 718 N.E.2d 415. We denied the writ based on laches.

{¶17} Here, relators delayed 19 days from the final date (September 6) on which county council could have placed the proposed charter amendment on the ballot to file this mandamus action on September 25. There is no evidence of any excuse or justification for this delay.

{¶18} As we observed upon comparable facts in *Carberry*, 93 Ohio St.3d at 524, 757 N.E.2d 307, "[o]ur consistent requirement that expedited election cases be filed with the required promptness is not simply a technical nicety." The statutory deadline to have absentee ballots printed and ready for use was October 1, R.C. 3509.01, and that date passed before respondents filed their answer. If relators had acted more promptly, this might have been avoided and any potential prejudice to the county in its statutory obligation to absentee voters would have been minimized. Id.; *Valore*, 87 Ohio St.3d at 146, 718 N.E.2d at 415.

{¶19} By contrast, relators in two other election cases who sought placement of charter amendment issues on the November 5, 2002 ballot filed their cases on September 6, 2002, instead of waiting 19 more days. *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041; *State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050.

{¶20} Therefore, we deny the writ because of laches insofar as relators request placement of the proposed charter amendment on the November 2002 election ballot.

Mandamus

{¶21} Moreover, even if laches did not apply and to the extent that relators' complaint could be construed to include a request for submission of the charter amendment at an election after November 5, 2002, relators are still not entitled to the writ.

{¶22} First, we have expressly *refused* to adopt a holding that "as long as a legally sufficient charter amendment petition is filed on or before the sixtieth day before the next scheduled election, * * * council has a duty to submit the issue to the electorate at that election."  Instead, we held that "each case must be considered separately based on the particular facts involved.  There may be circumstances where a charter amendment petition filed on the sixtieth day before the special election would not afford an adequate opportunity for council to determine the sufficiency of the petition and enact an ordinance on the same day."  *State ex rel. Commt. for the Charter Amendment Petition v. Avon* (1998), 81 Ohio St.3d 590, 595, 693 N.E.2d 205.

{¶23} Relators did not file their petition with council until the next-to-last day before the constitutional deadline for the county council to pass a resolution placing the charter amendment issue on the November 5, 2002 election ballot, and the county council delivered the petition to the board of elections to verify the

signatures on that same day. According to the clerk of the county council, this delivery was made without delay in order to facilitate timely action by the council. The board, however, did not transmit the petition back to the county council until after the deadline had passed. There is also no evidence that when they filed their petition on September 5, relators requested that county council act by September 6, 2002, to place the proposed charter amendment on the November 5, 2002 general election ballot. Even if relators acted with the requisite diligence and their petition was valid, the council had no duty to place the proposed charter amendment on the November 5, 2002 election ballot before the board of elections verified the number of valid signatures. This case is consequently distinguishable from *Avon*, where the clerk had certified the sufficiency of the petition to the city council by the 61st day before the pertinent election. *Avon*, 81 Ohio St.3d at 594, 693 N.E.2d 205; see, also, *State ex rel. Commt. for the Charter Amendment, City Trash Collection*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 6-7, where the board of elections informed the clerk that the petition contained sufficient valid signatures by September 5, 2002.

{¶24} Second, the county council had no duty to submit the proposed charter amendment to the electorate unless all applicable statutory requirements were met. *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 335-336, 617 N.E.2d 1120. Petitioners must comply with statutes that do not conflict with the Ohio Constitution and the city charter before the county council has a duty to submit a charter amendment to the voters. See *Hackworth*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, at ¶31.

{¶25} Nonconflicting provisions of R.C. 3501.38 apply to charter amendment petitions. See, e.g., *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 55, 641 N.E.2d 1075. Both R.C. 3501.38(J), as amended on August 28, 2001, and R.C. 3599.36, as amended on December 9, 1997, require that all petitions and other documents relating to any election matter be accompanied by the

following statement in boldface capital letters: **"WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE."** 147 Ohio Laws, Part IV, 7608, 7667. During the period from December 9, 1997, until August 28, 2001, there were conflicting statutory requirements for the appropriate election-falsification statement. *Stutzman v. Madison Cty. Bd. of Elections* (2001), 93 Ohio St.3d 511, 517, 757 N.E.2d 297.

**{¶26}** Relators claim that based on *Stutzman*, 93 Ohio St.3d at 517, 757 N.E.2d 297, the technical violation of R.C. 3501.38(J) does not invalidate their petition. Relators' contention lacks merit. In *Stutzman*, the petitioners reasonably relied on the election-falsification language of former R.C. 3501.38(J), which was not amended to reflect the previous amendment to R.C. 3599.36 until August 28, 2001.

**{¶27}** We concluded, however, that *after* August 28, 2001, R.C. 3501.38(J) and 3599.36 were consistent with each other and required compliance with the amended language in order to avoid invalidation of the petition:

**{¶28}** "We note, however, that with the August 28, 2001 amendment to R.C. 3501.38(J), both it and R.C. 3599.36 now require the same language, and that *petitioners should follow this requirement in the future in order to avoid any invalidation of their petition*." (Emphasis added.) Id. at 518, 757 N.E.2d 297.

**{¶29}** Therefore, based on *Stutzman*, relators' petition, which was circulated and filed after the August 28, 2001 amendment to R.C. 3501.38(J), did not comply with R.C. 3501.38(J) and 3599.36. Their petition contained an obsolete election-falsification statement.

**{¶30}** Despite relators' contentions to the contrary, the statutory requirement of the election-falsification statement does not conflict with the Ohio Constitution. Section 4, Article X of the Ohio Constitution does not specify the petition form. Section 4 expressly provides, "Laws may be passed * * * to facilitate the operation of this section." Therefore, nonconflicting procedures, like the

election-falsification-statement requirement of R.C. 3501.38(J) and 3599.36, may be added. See *State ex rel. Vickers v. Summit Cty. Council* (2001), 93 Ohio St.3d 526, 528, 757 N.E.2d 310. Unlike the R.C. 731.32 precirculation requirement in *Vickers*, the statutory requirements here do not contravene Section 4; instead, R.C. 3501.38(J) and 3599.36 facilitate the operation of the section. And relators' reliance on *State ex rel. Riehl v. Malone* (1994), 94 Ohio App.3d 448, 640 N.E.2d 1197, is misplaced because the appellate court in that case did not address this issue, and the common pleas court decision in *Riehl* is not persuasive. Cf., also, *State ex rel. Blackman v. Hitte* (1983), 5 Ohio St.3d 156, 5 OBR 377, 449 N.E.2d 1279.

{¶31} Furthermore, the fact that Section 4, Article X is self-executing does not alter this conclusion. Self-executing means merely that this section is "effective immediately without the need of any type of implementing action." Black's Law Dictionary (7th Ed.1999) 1364; see, also, *State ex rel. Russell v. Bliss* (1951), 156 Ohio St. 147, 151, 46 O.O. 3, 101 N.E.2d 289. Although power authorized by the self-executing constitutional grant in Section 4, Article X exists without the aid of legislation, these provisions may still be limited by relevant charter, statutory, or constitutional provisions. See *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 20, 577 N.E.2d 645. In *Vickers*, which involved a county charter amendment under Section 4, Article X, we specifically recognized that nonconflicting statutes are applicable to the county charter amendment process. 93 Ohio St.3d at 528, 757 N.E.2d 310. We also noted in *Vickers* that Section 3.05, Article III of the Summit County Charter incorporated general law relating to municipalities. Id.

{¶32} Therefore, respondents had no duty to submit the proposed charter amendment to the electorate. "The settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01*, 96 Ohio St.3d 308, 2002-Ohio-4194,

774 N.E.2d 239, at ¶ 49. Neither R.C. 3501.38(J) nor 3599.36 expressly permits merely substantial compliance, so they require strict compliance. Relators' petition did not comply with R.C. 3501.38(J) and 3599.36.

## Conclusion

**{¶33}** We deny the writ. Relators have not acted with the requisite diligence to have the charter amendment issue placed on the November 5, 2002 general election ballot, and the county council and the board of elections have no duty to place the proposed charter amendment on the November 2002 ballot or a later election ballot, because the petition did not comply with the applicable statutory requirements.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

COOK, J., not participating.

————————————

Chester, Willcox & Saxbe, L.L.P., and Donald C. Brey, for relators.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., N. Victor Goodman, C. David Paragas, Jack Gregg Haught, and Jennifer M. Turk, for respondents.

————————————