[Cite as *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections,* 122 Ohio St.3d 462, 2009-Ohio-3657.]

THE STATE EX REL. FINKBEINER *v.* LUCAS COUNTY

BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections,* 122 Ohio St.3d 462, 2009-Ohio-3657.]

*Elections — Petition for writ of prohibition — Relevance of R.C. 3501.38(J) —*
    *Writ granted.*

(No. 2009-1147 — Submitted July 22, 2009 — Decided July 27, 2009.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1}  This is an original action for a writ of prohibition to prevent a board of elections and its members from placing a mayoral recall issue on the November 3, 2009 general election ballot.  Because the relator has established his entitlement to the requested extraordinary relief, we grant the writ.

**Recall Petition**

{¶ 2}  In 2008, the group known as Take Back Toledo requested a recall petition from Gerald E. Dendinger, the clerk of the Toledo City Council.  In November 2008, the clerk sent the group a form for a recall petition.  The petition form included the statement "Whoever knowingly signed this petition more than once, signs a name other than his own, or signs when not a legal voter is liable to prosecution."

{¶ 3}  Relator, Carleton S. Finkbeiner, is the mayor of the city of Toledo.  On April 9, 2009, Take Back Toledo submitted to the clerk of council a signed petition "for the recall of Carleton S. Finkbeiner who holds the office of Mayor in the City of Toledo."

{¶ 4}   The clerk of the city council sent the petition to respondents, the Lucas County Board of Elections and its members, to determine the validity of the signatures contained in the petition.  Section 87A of the Toledo Charter requires valid signatures of 25 percent of the electors voting in the last city election or, in this case, 19,753 valid signatures, to certify the recall issue to the election ballot. The board examined most of the part-petitions submitted, including 39,994 signatures, and on April 17, it found 20,444 of those signatures to be valid.

{¶ 5}   By letter dated April 20, Finkbeiner informed the clerk of council that he was challenging the sufficiency of the petition because it failed to state that election falsification is a fifth-degree felony.  On that same day, however, the clerk certified the sufficiency of the recall petition to the board of elections and requested that the board hold the recall election at the November 3, 2009 general election.  Finkbeiner administratively appealed the clerk's decision to the Lucas County Court of Common Pleas, but that appeal has now been dismissed on the clerk's motion based on the common pleas court's determination that the decision was not appealable under R.C. Chapter 2506.

**Protest and Board of Elections Decision**

{¶ 6}   On April 28, Finkbeiner filed a protest against the recall petition with the board of elections.  Finkbeiner claimed that the petition was defective because (1) it lacked the election-falsification statement that he alleges is required by R.C. 3501.38(J), and (2) over 2,500 additional petition signatures were invalid, so the petition lacked sufficient valid signatures.

{¶ 7}   The board of elections held a hearing, including sworn testimony, on the protest on May 29 and June 9.  On June 9, the board of elections denied Finkbeiner's protest and certified the recall issue for placement on the November 3, 2009 general election ballot.

**Prohibition Action**

{¶ 8} On June 23, Finkbeiner filed this original action for a writ of prohibition to prevent respondents from including the mayoral recall issue on the November 3, 2009 general election ballot. On July 16, respondents answered.

{¶ 9} This cause is now before this court for our S.Ct.Prac.R. X(5) determination. Because this case involves the November 3 election, we expedite our decision.

## S.Ct.Prac.R. X(5) Standard

{¶ 10} We must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. S.Ct.Prac.R. X(5). Dismissal, which the board and its members request, is required if it appears beyond doubt, after presuming the truth of all material factual allegations of Finkbeiner's complaint and making all reasonable inferences in his favor, that he is not entitled to the requested extraordinary relief in prohibition. *State ex rel. Mason v. Burnside*, 117 Ohio St.3d 1, 2007-Ohio-6754, 881 N.E.2d 224, ¶ 8.

{¶ 11} If, however, after so construing Finkbeiner's complaint, it appears that his prohibition claim may have merit, the court will grant an alternative writ and issue a schedule for the presentation of evidence and briefs. Id.

{¶ 12} Finally, if the pertinent facts are uncontroverted and it appears beyond doubt that Finkbeiner is entitled to the requested extraordinary relief in prohibition, a peremptory writ will be granted. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 14.

{¶ 13} With these standards guiding our S.Ct.Prac.R. X(5) determination, we next consider Finkbeiner's prohibition claim.

## Prohibition Claim

{¶ 14} Finkbeiner requests a writ of prohibition to prevent the board of elections and its members from placing the mayoral recall issue on the November 3, 2009 general election ballot. To be entitled to the writ, Finkbeiner must establish that (1) the board of elections and its members are about to exercise

quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no adequate remedy exists in the ordinary course of law. *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 15.

{¶ 15} Finkbeiner has established the first requirement for the writ because the board of elections "exercised quasi-judicial authority by denying his protest after conducting a hearing that included sworn testimony." *State ex rel. Wellington v. Mahoning Cty. Bd. of Elections*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, ¶ 10. Therefore, the dispositive issue is whether Finkbeiner established the remaining prohibition requirements.

### Prohibition: Adequate Remedy

{¶ 16} To be entitled to the writ, Finkbeiner is required to establish the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 18, 25.

{¶ 17} Finkbeiner claims that he lacks an adequate remedy in the ordinary course of law. In their answer, respondents admit that this legal requirement has been met.

{¶ 18} Although this court is not bound by the parties' stipulation on this legal issue, we hold that the election was sufficiently imminent at the time the elections board denied Finkbeiner's protest and when Finkbeiner filed this prohibition action that he lacked an adequate remedy in the ordinary course of law. See *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291-292, 649 N.E.2d 1205, quoting *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393 ("Concerning the third prerequisite for a writ of prohibition, given the proximity of the election, an injunction would arguably not constitute an adequate remedy because any 'appellate process would last well past the election' "); cf. *Tatman v. Fairfield*

*Cty. Bd. of Elections*, 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 18-19; *State ex rel. Gains v. Mahoning Cty. Bd. of Elections*, 119 Ohio St.3d 1433, 2008-Ohio-4442, 893 N.E.2d 197; and *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 1, 2006-Ohio-4334, 854 N.E.2d 1025, ¶ 42-45, which are all cases in which the time periods before the pertinent elections were somewhat lengthier than those involved here.

**{¶ 19}** In this regard, we are now about two months away from the date that absentee ballots must be printed and available for use. R.C. 3509.01.

**{¶ 20}** Furthermore, prospective relators in election-related cases should not be placed in an impossible situation. On the one hand, we have barred them from filing election-related actions if they do not bring their action with the requisite promptness. See, e.g., *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19, quoting *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 12 (" 'If relators do not act with the required promptness, laches may bar the action for extraordinary relief in an election-related matter' "). If we were to hold now that Finkbeiner had an adequate remedy at law, we would be deciding that if relators act too quickly, their action is also barred because they have not filed it in the correct forum. Election-law precedent should not be constructed as an elaborate trap for the unwary. Prospective relators need not navigate between the Scylla of acting too slowly and the Charybdis of acting too quickly to have this court address the merits of their election-related prohibition claim.

**{¶ 21}** Therefore, as respondents admit, the election is sufficiently close so that Finkbeiner lacks an adequate remedy in the ordinary course of law via an action for a prohibitory injunction.

**Prohibition: Unauthorized Exercise of Quasi-Judicial Authority**

**{¶ 22}** For the remaining prohibition requirement that the board is about to exercise unauthorized judicial or quasi-judicial power, "we must determine

whether the board [of elections] acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. There is no claim or evidence of fraud or corruption here, so Finkbeiner must establish that the board of elections abused its discretion or clearly disregarded applicable law by denying his protest and certifying the recall issue to the November 3 election ballot. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

{¶ 23} Finkbeiner claims that the board of elections abused its discretion and clearly disregarded R.C. 3501.38(J) in denying his protest and upholding the validity of the recall petition.

{¶ 24} R.C. 3501.38 provides:

{¶ 25} "All * * * petitions presented to or filed with * * * a board of elections or with any other public office * * * for the holding of an election on any issue shall * * * be governed by the following rules:

{¶ 26} "* * *

{¶ 27} "(J) All * * * petitions under this section shall be accompanied by the following statement in boldface capital letters: WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE."

{¶ 28} R.C. 3501.38(J) is phrased in mandatory language and requires strict compliance. *State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 32 ("Neither R.C. 3501.38(J) nor 3599.36 expressly permits merely substantial compliance, so they require strict compliance"); *State ex rel. Griffin v. Krumholtz* (1982), 70 Ohio St.2d 125, 126-127, 24 O.O.3d 234, 435 N.E.2d 1110 (referendum petition containing warning

6

that "whoever knowingly signs the petition more than once, signs a name other than his own, or signs when not a legal voter, is liable to prosecution" violated R.C. 3501.38(J), which required strict compliance with its election-falsification statement).

{¶ 29} The recall petition did not comply with R.C. 3501.38(J). Instead, it contained language that is similar to the language the court held to be defective in *Griffin*, and the language was also not in boldface or capital letters.

{¶ 30} Respondents argue that the recall petition did not need to comply with R.C. 3501.38(J), because the Toledo Charter does not require this election-falsification statement.

{¶ 31} In assessing respondents' claim, we have consistently held that "'[m]unicipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible.' " *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146-02, W. End Blight Designation v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 20, quoting *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971. Therefore, " '[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter.' " *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 533, 757 N.E.2d 314, quoting *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 112, 712 N.E.2d 696.

{¶ 32} For the following reasons, R.C. 3501.38(J) is applicable to the mayoral recall petition.

{¶ 33} First, statutes like R.C. 3501.38(J) are incorporated by reference by Section 11 of the Toledo Charter, which provides, "All elections provided for by this Charter, whether for the choice of officers or the submission of questions to the voters, shall be conducted by the election authorities prescribed by general

laws and *the provisions of the general laws of the State shall apply to all such elections except as provision is otherwise made by this Charter.*"  (Emphasis added.)

**{¶ 34}** Provision for an election-falsification statement like that specified in R.C. 3501.38(J) is not "otherwise made" by the Toledo Charter.  Instead, the recall provisions and other general petition-form requirements are silent on this issue.  See Sections 87A, 92, and 93, Toledo Charter.  In fact, as Finkbeiner notes, the Toledo voters repealed the applicability of certain recall-petition requirements in 1934 and rejected a 1959 amendment to reinstate these requirements.

**{¶ 35}** Second, we have specifically held that nonconflicting statutory requirements like the election-falsification statement in R.C. 3501.38(J) apply when neither the constitution nor the charter forbids their application.  See *Vickers*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 30-32, in which we also observed that the county charter incorporated general law relating to municipalities.

**{¶ 36}** Third, even assuming that the Toledo Charter's limited form requirements for recall petitions could be construed as comprehensive, because provisions relating to the election-falsification statement required by R.C. 3501.38(J) are not "otherwise made" by the charter, the statute applies.  See *State ex rel. Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 167, 169-170, 580 N.E.2d 1063 (while charter-referendum provisions are comprehensive and detailed, the charter is silent on the statutory requirement that copies of ordinances be filed with the city auditor, so the statute applies).

**{¶ 37}** Fourth, our holding in *State ex rel. Blackman v. Hitte* (1983), 5 Ohio St.3d 156, 5 OBR 377, 449 N.E.2d 1279, does not require a contrary result.  In that case, we held that the R.C. 3501.38(J) requirements on the recall petitions were inapplicable because (1) the charter provided only that the *conduct* of

8

elections, and not the components of recall elections, follows state law if the charter is silent, and (2) under R.C. 731.41, a municipal charter prevails over statutes in referenda. Id. at 158, 5 OBR 377, 449 N.E.2d 1279. Here, unlike the charter at issue in *Blackman*, Section 11 of the Toledo Charter incorporates general laws for all elections provided by charter and not merely the "conducting" of those elections. Moreover, a recall is not a referendum subject to R.C. 731.41 ("Sections 731.28 to 731.41, inclusive, of the Revised Code do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures"). Cf. Sections 81, 87A, and 92, Toledo Charter; see also *Citizens for Honest & Responsible Govt. v. Secy. of State* (2000), 116 Nev. 939, 949, 11 P.3d 121 ("The interests served by the initiative and referendum process are sufficiently distinguishable from those involved in the recall process").

{¶ 38} Finally, insofar as the recall petitioners relied on forms provided by the clerk of council that did not include the required election-falsification statement, election officials are not estopped from asserting defects in the forms. See *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 37. We will not construe Section 93 of the Toledo Charter, which provides that "all petition papers shall conform" to the forms kept by the clerk of council, as superseding all applicable legal requirements, because that interpretation would accord the clerk unfettered authority to provide noncompliant forms without any legal consequence to the petitioners submitting them. We must construe the charter provisions to avoid such an unreasonable and absurd result. See *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 22. Rather, this charter requirement should be construed in pari materia with other requirements, including the applicable statutory requirements, like the election-falsification statement required by R.C. 3501.38(J) and incorporated by Section 11 of the Toledo Charter.

**{¶ 39}** Therefore, we hold that Finkbeiner has established that the board of elections abused its discretion and clearly disregarded applicable law – R.C. 3501.38(J) – by denying the protest challenging the validity of the recall petition. This application of R.C. 3501.38(J) to recall petitions gives effect to Section 11 of the Toledo Charter and harmonizes the charter with the statute. See, e.g., *State ex rel. Fite v. Aeh* (1997), 80 Ohio St.3d 1, 4, 684 N.E.2d 285.

### Conclusion

**{¶ 40}** Therefore, Finkbeiner has proven his entitlement to the requested extraordinary relief. Respondents exercised quasi-judicial authority in denying his protest to the recall petition, the board's decision to deny the protest was legally unauthorized because the recall petition failed to comply with R.C. 3501.38(J), and Finkbeiner lacked an adequate remedy in the ordinary course of law.

Writ granted.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

MOYER, C.J., and O'DONNELL and CUPP, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

### I

**{¶ 41}** I respectfully dissent from the majority decision to grant a writ of prohibition for relator, Carleton S. Finkbeiner. While I agree that respondents, the Lucas County Board of Elections and its members, exercised quasi-judicial authority in denying Finkbeiner's protest to the recall petition against him and that the board's decision was legally unauthorized, I fail to see how he lacked an adequate remedy in the ordinary course of law, given the availability of a prohibitory injunction through a court of common pleas. Because Finkbeiner had an ample amount of time to seek such an injunction when he filed the present suit, I would dismiss the cause.

**II**

**{¶ 42}** Arguing that the recall petition against him was defective, Finkbeiner seeks a writ of prohibition to prevent respondents from placing the mayoral recall issue on the November 3, 2009 general election ballot. To be entitled to such a writ, Finkbeiner is required to establish, inter alia, that he lacked an adequate remedy in the ordinary course of the law. *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 18, 25.

**{¶ 43}** Although the respondents stipulate that this factor is met, that stipulation, relating not to a factual issue but to a legal conclusion, is not binding on this court. See, e.g., *Aulizia v. Westfield Natl. Ins. Co.* (June 15, 2007), Trumbull App. No. 2006-T-0057, 2007-Ohio-3017, 2007 WL 1732382, ¶ 14, fn. 2, citing *Ish v. Crane* (1862), 13 Ohio St. 574 ("While courts are ordinarily bound by the factual stipulations of litigants, courts are not bound in their determination of questions of law"). Therefore, we should disregard the stipulation of the parties and apply our legal precedent to the facts presented.

**{¶ 44}** We have decided several cases that directly address the issue of adequate remedies in the ordinary course of law in this context. These cases clearly demonstrate that a prohibitory injunction action is an adequate remedy in the ordinary course of law to correct an alleged error by an elections board in approving a petition, provided that an election is not imminent when the board denies the protest or when the case challenging the decision is filed. See *Tatman v. Fairfield Cty. Bd. of Elections*, 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 18-19; *State ex rel. Gains v. Mahoning Cty. Bd. of Elections*, 119 Ohio St.3d 1433, 2008-Ohio-4442, 893 N.E.2d 197; *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 1, 2006-Ohio-4334, 854 N.E.2d 1025, ¶ 42-45; cf. *State ex rel. Barton v. Butler Cty. Bd. of Elections* (1988), 39 Ohio St.3d 291, 292, 530 N.E.2d 871 ("Prohibition does not lie to correct an allegedly erroneous

exercise of properly assumed quasi-judicial authority by a board of elections in approving referendum petitions for the ballot; injunction is the proper remedy in such a case"). It is well settled that this court lacks original jurisdiction to issue injunctive relief. Section 2(B), Article IV, Ohio Constitution; *State ex rel. Stine v. McCaw* (1939), 136 Ohio St. 41, 15 O.O. 538, 23 N.E.2d 631, paragraph two of the syllabus.

{¶ 45} In *Tatman*, the election was almost seven months away when the board denied relator's protest against a person's candidacy for county sheriff and was still over six months away when relator filed a prohibition action challenging the elections board's decision denying the protest. *Tatman*, 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 44. We held that because the election was not an imminent election when the board denied relator's protest, dismissal of the election-related prohibition action was appropriate. Id. at ¶ 18.

{¶ 46} Similarly, in *Gains*, the election was less than six months away when the board denied the relators' protest against a person's candidacy, and it was less than five months away when the relator filed a prohibition action to prevent the person's candidacy on an election ballot. Citing *Tatman*, we granted the board's motion for judgment on the pleadings and dismissed the prohibition action because relator "has or had an adequate remedy at law by way of an action for a prohibitory injunction." 119 Ohio St.3d 1433, 2008-Ohio-4442, 893 N.E.2d 197.

{¶ 47} This case raises comparable circumstances. When the board of elections denied Finkbeiner's protest, the November 3 election was almost five months away, and when Finkbeiner filed this prohibition action challenging the board's decision, the election was over four months away. Notably, Finkbeiner could have filed a protest against the petition when the petition was initially filed with the clerk of council on April 9, but he waited until eight days after the clerk's certification of the petition to the board of elections to do so and then waited

another 14 days after the board's June 9 denial of his protest to file the prohibition action in this court.

{¶ 48} To be sure, we have "often held in election cases that 'given the closeness of the election date * * *, relators lack an adequate remedy in the ordinary course of law' because alternate remedies are not sufficiently speedy." *Evans*, 111 Ohio St.3d 1, 2006-Ohio-4334, 854 N.E,2d 1025, ¶ 42, quoting *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 22. The preeminent cases recognizing this general proposition are *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291-292, 649 N.E.2d 1205, and *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393.

{¶ 49} These cases, however, are distinguishable. *Thurn* was an expedited election case filed slightly more than a month before the election, and *Smart* was filed less than a month before the election. In addition, the sole case cited by Finkbeiner in support of his allegation that he lacks an adequate remedy in the ordinary course of law was filed less than three months before the election. See *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194. By contrast, this case, which is not an expedited election case under S.Ct.Prac.R. X(9),[1] does not involve an election that was imminent at the time that the board denied the protest or when this case was filed.

{¶ 50} I understand the concern raised in the majority opinion, that it is sometimes difficult for potential relators in election-related cases to know what remedies to seek and in what order. I do not agree, though, that the above interpretation would turn our election-law precedent into "an elaborate trap for the unwary." In fact, the majority opinion obfuscates the standard we have applied consistently to previous cases. It cannot be reasonably argued that if relator had

---

1. Under this rule, original actions filed in this court relating to a pending election that are filed within 90 days prior to the election receive an expedited evidence and briefing schedule.

filed a legal action soon after the board denied his protest, rather than the request for an extraordinary writ, he would have fallen into a "trap" for the unwary. Such a legal action could have been resolved well before the distribution of ballots.

{¶ 51} As is often the case, the touchstone is reasonableness. An individual wishing to challenge an election-related decision is merely expected to assert his or her claims with reasonable diligence and to pursue remedies in their appropriate order. If, as is the case here, several months separate the alleged wrong and the election, and the ordinary course of law could yield an adequate result, the individual should exhaust those other options before seeking an extraordinary writ in this court.

{¶ 52} It must be remembered that "[e]xtraordinary writs * * * provide extraordinary, not alternative remedies * * *." *State ex rel. Johnson v. Talikka* (1994), 71 Ohio St.3d 109, 110, 642 N.E.2d 353. One may not pursue measures of last resort unless it is absolutely necessary to do so, and it was not necessary here; Finkbeiner could have obtained and can still receive relief elsewhere in the ordinary course of law. We serve no one by changing the application of our standards in order to resolve the merit issue raised by relator.

{¶ 53} Moreover, the majority's concerns of potential dismissal for failure to promptly file a challenge, thereby creating "an impossible situation" for prospective relators, are overrated. While one who waits too long to bring a matter to this court's attention may risk the application of laches, that legal doctrine punishes only the dilatory, not the diligent. See *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. Laches will not affect a prospective relator unless he or she has unjustifiably ignored his potential claims; I fail to see how that doctrine affects our consideration of whether an otherwise diligent individual has properly exhausted his other remedies.

14

**{¶ 54}** Therefore, based on our precedent in *Tatman* and *Gains*, I would dismiss this case because Finkbeiner had and continues to have an adequate remedy in the ordinary course of law by filing a common pleas court action for a prohibitory injunction.

O'DONNELL and CUPP, JJ., concur in the foregoing opinion.

_____

Vorys, Sater, Seymour and Pease, L.L.P., John J. Kulewicz, William J. Pohlman, Mary J. Henkel, Michael J. Hendershot, and Elizabeth A. Davis; and Law Office of Fritz Byers and Fritz Byers, for relator.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borrell, Assistant Prosecuting Attorney, for respondents.

_____