NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3252

THE STATE EX REL. COOK *v.* BOWLING GREEN CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cook v. Bowling Green City School Dist. Bd. of Edn.*, Slip Opinion No. 2020-Ohio-3252.]**

*Elections—Mandamus—Writ of mandamus sought to compel school board to certify school-district-transfer proposal to county board of elections for placement on August 4, 2020 special-election ballot and writ of mandamus sought to compel board of elections to place transfer proposal on special-election ballot—Under R.C. 3311.242(B), a school board must "promptly" certify a transfer proposal that has been certified by a county board of elections under R.C. 3311.242(C) as having sufficient signatures back to the county board of elections for placement on the ballot—Writ granted as to school board and writ denied as to board of elections.*

(No. 2020-0596—Submitted June 2, 2020—Decided June 8, 2020.)

IN MANDAMUS.

**Per Curiam.**

{¶ 1} This case involves a petition proposing the transfer of territory from one school district to another under R.C. 3311.242. Relator, Jamie Cook, an elector in the territory proposed to be transferred, seeks a writ of mandamus ordering respondent Bowling Green City School District Board of Education to (1) certify the school-district-transfer proposal to the State Board of Education, together with a map showing the territory proposed to be transferred and (2) certify the transfer proposal to respondent Wood County Board of Elections for placement on the ballot at the August 4 special election. Cook also seeks a writ ordering the board of elections to place the proposal on the August 4 ballot. We grant the writ as to the school board and deny it as to the elections board.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} R.C. 3311.242 sets out a procedure by which certain territory may be transferred from one school district to another by a majority vote of the territory's electors at a general, primary, or special election. The procedure applies only to territory that (1) lies in a township containing the territory of two or more school districts and (2) adjoins the school district to which it would shift. R.C. 3311.242(A) and (B).

{¶ 3} The petition in this case relates to territory—delineated on a map that is included in the petition—in Milton Township, Wood County. The petition seeks to submit to the electors of the territory, at the August 4, 2020 special election, the question of the territory's transfer from the Bowling Green City School District to the Patrick Henry Local School District, effective for the beginning of the 2021-2022 school year. Milton Township includes the territory of two or more school districts, and the territory proposed to be transferred is adjacent to the Patrick Henry Local School District.

{¶ 4} Placing an R.C. 3311.242 transfer proposal on the election ballot involves a multistep process. First, at least 10 percent of the electors residing in the territory proposed to be transferred must sign a transfer petition and the petition must be submitted to their current school board. R.C. 3311.242(C). Second, "[u]pon receiving" the petition, the school board "shall cause the board of elections" of the county in which the territory is located "to check the sufficiency of signatures on the petition." *Id.* Third, if it confirms that the signatures are sufficient, the elections board must certify the petition back to the school board—after this step, the statute refers to the petition as "the proposal." R.C. 3311.242(B) and (C). Fourth, following that certification by the elections board, the school board

> shall *promptly* * * *
>> (1) File the proposal, together with a map showing the boundaries of the territory to be transferred, with the state board of education; [and]
>> (2) Certify the proposal to the board of elections of the county in which the eligible township is located for the purposes of having the proposal placed on the ballot at the next general or primary election *which occurs not less than ninety days after the date of the certification* or at a special election, the date of which shall be specified in the certification, which date shall *not be less than ninety days after the date of the certification*.

(Emphasis added.) R.C. 3311.242(B). Fifth, upon the school board's certification of the proposal as described in R.C. 3311.242(B)(2), "the board of elections shall make the necessary arrangements for the submission of the question whether to

approve the transfer to the qualified electors to vote thereon * * *." R.C. 3311.242(D).

{¶ 5} In March 2020, the Bowling Green City School District received 12 transfer petitions (which it designated Petitions A through L), each relating to different territories and each seeking to submit transfer proposals to voters at the August 4 special election. The petitions involved proposed transfers to five different school districts. The school board forwarded the petitions to the elections board, which certified that 11 of them contained sufficient valid signatures.

{¶ 6} After receiving the certified proposals back from the elections board, the school board forwarded them to a title agent to obtain an opinion as to (1) whether the territory proposed to be transferred was adjacent to the transferee district in accordance with R.C. 3311.242(B) and (2) whether the proposed transfer, if approved by voters at the election, would create a noncontiguous school district in violation of R.C. 3311.06(B).[1]

{¶ 7} On April 21, after receiving the opinion of its title agent, the school board certified six of the proposals to the elections board for placement on the August 4 ballot. It voted to take no action on three of the proposals, because it believed the territories proposed to be transferred were not adjacent to the transferee districts. And it voted to take no action on the two remaining proposals—Petition A and Petition L—because it believed each would create a noncontiguous school district. On May 1, the school board reversed its decision on Petition A and certified it to the August 4 ballot.

---

1. R.C. 3311.06(B) provides:

> The territory included within the boundaries of a city, local, exempted village, or joint vocational school district shall be contiguous except where a natural island forms an integral part of the district, where the state board of education authorizes a noncontiguous school district, as provided in division (E)(1) of this section, or where a local school district is created pursuant to section 3311.26 of the Revised Code from one or more local school districts, one of which has entered into an agreement under section 3313.42 of the Revised Code.

{¶ 8} Petition L was the original version of the petition at issue in this case. According to the school board, the map included in Petition L showed a small, triangular parcel that would become an island unconnected to the rest of the Bowling Green City School District upon the effectuation of the proposed transfer. After the school board voted to take no action on Petition L, its backers circulated a new petition—Petition M—with an amended map.

{¶ 9} R.C. 3311.242(B)(2) requires transfer proposals to be certified to the board of elections no later than 90 days before the election at which the proposal is to appear on the ballot. For the August 4 election, the certification deadline was May 6. Petition M was submitted to the school board on April 24—12 days before the deadline. On Friday, May 1, the school board adopted a resolution certifying the petition to the elections board to check the sufficiency of the signatures, noting the May 6 deadline. The school board conveyed the petition to the elections board on Monday, May 4. On May 5, the elections board certified that the petition contained a sufficient number of valid signatures.

{¶ 10} The school board then forwarded the proposal to its title agent to seek her opinion on whether the proposal, if enacted, would create a noncontiguous school district, but the title agent was not able to review the proposal until the next morning. On May 6, she informed the school board of her opinion that Petition M was legally compliant.

{¶ 11} On May 8, the school board held a special meeting at which it certified the Petition M transfer proposal to the elections board for placement on the ballot. However, because less than 90 days remained before the August 4 special election, the school board's resolution stated that the proposal was certified for placement on the ballot at the November 3, 2020 general election.

{¶ 12} Also on May 8, Cook, a qualified elector in the territory covered by Petition M, filed his mandamus complaint. In it, he alleges that the school board failed to comply with its statutory obligations to promptly certify the petition and

the proposal to the board of elections and that the school board's unwarranted delay caused the transfer proposal to miss the May 6 deadline for certification to the August 4 ballot.

{¶ 13} Cook seeks a writ of mandamus ordering the school board to (1) certify the school-district-transfer proposal to the State Board of Education, together with a map showing the territory proposed to be transferred and (2) certify the transfer proposal to the elections board for placement on the ballot at the August 4 special election. He also seeks a writ ordering the elections board to place the proposal on the August 4 ballot.

## II. ANALYSIS

### A. Mandamus Standard

{¶ 14} To be entitled to a writ of mandamus, Cook must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given the proximity of the August 4, 2020 special election, Cook does not have an adequate remedy in the ordinary course of the law. *See, e.g., State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

{¶ 15} With respect to the remaining elements, this court looks to whether the respondent has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Cook does not allege fraud or corruption, so the question is whether the respondents have abused their discretion or clearly disregarded applicable law. A respondent abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

### B. Laches

{¶ 16} Before turning to the merits, we address the school board's argument that Cook's claim is barred by laches. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 17} The school board asserts that Cook should have begun circulating Petition M in March, when his counsel learned from the school board's attorneys about potential problems with Petition L, rather than waiting until the school board formally voted to take no action on Petition L on April 21. It further asserts that Cook should have filed this mandamus action before the school board met to take action on Petition M. It argues that Cook's delay prejudiced it by causing this case to become expedited. Cook opposes these arguments.

{¶ 18} We reject the school board's laches defense. "[T]he laches standard focuses on delay in the assertion of a right, not on whether a relator contributed to a delay in a cause of action becoming ripe." *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.*, ___ Ohio St.3d ___, 2020-Ohio-339, ___ N.E.3d ___, ¶ 8 ("*Dunn II*"). Cook's actions in March are therefore irrelevant. Moreover, as the school board itself points out, it can act only through a resolution adopted at a properly noticed public meeting. Its counsel's communication to Cook's counsel about potential problems with Petition L did not constitute action by the school board; Cook could not have known with any certainty in March that the school board would ultimately reject Petition L almost a month later.

{¶ 19} Cook's claim became ripe, at the earliest, on May 6, when the school board failed to take action by the special-election certification deadline. Cook filed his complaint two days later when it became clear that the school board's certification submitted the proposal for the November general election instead of

the August special election. This case would have been automatically expedited under S.Ct.Prac.R. 12.08(A) even if Cook had filed it on May 6. Therefore, the school board has shown no prejudice.

### C. The School Board's Ministerial Duties

{¶ 20} Cook argues that R.C. 3311.242 grants no discretion to the school board and instead imposes a mandatory, ministerial duty to promptly certify transfer petitions and proposals to the board of elections, citing *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.*, 158 Ohio St.3d 370, 2020-Ohio-40, 143 N.E.3d 488, ¶ 15 ("*Dunn I*"). He asserts that the school board failed to comply with this duty and that this failure caused the proposal to miss the statutory deadline for certification for the August 4 special election. He argues, citing *Dunn II*, that we should therefore order the school board to certify the proposal for placement on the August 4 ballot, despite the deadline having passed.

{¶ 21} The school board argues that this case does not involve purely ministerial acts and that before certifying the proposal to the elections board, it had the authority to determine whether the proposal violated R.C. 3311.242(B) and whether the proposed transfer would result in a violation of R.C. 3311.06. The school board argues that it was authorized to, within its discretion, adopt a process for its expert to review the proposal and verify compliance with R.C. 3311.242(B) and 3311.06. The school board asserts that because it acted within the scope of its authority and did not deliberately attempt to delay the certification process, it acted promptly under the circumstances.

{¶ 22} R.C. 3311.242 provides that "[u]pon receiving" a transfer petition, a school board shall cause the board of elections to check the sufficiency of the signatures, R.C. 3311.242(C), and once the elections board has certified the signatures as sufficient, the school board shall "promptly" certify the proposal to the board of elections and file the proposal, along with a map of the territory proposed to be transferred, with the State Board of Education, R.C. 3311.242(B).

In *Dunn I*, we held that "R.C. 3311.242(C) establishes a *ministerial* duty on the part of the * * * school board to act. The statute does not empower a school board to determine the validity of a petition." (Emphasis sic.) *Id*. at ¶ 15.

{¶ 23} When we made that statement, we were considering only the requirement, set forth in R.C. 3311.242(C), that the school board cause the elections board to verify the signatures "[u]pon receiving" the petition, not the requirement, set forth in R.C. 3311.242(B), to "promptly" certify the proposal for placement on the ballot. However, our holding in *Dunn I* that the statute affords no discretion and imposes a mandatory, ministerial duty on the school board applies equally to R.C. 3311.242(B)'s requirement to promptly certify the proposal to the elections board.

{¶ 24} In *Dunn I*, we relied on *State ex rel. Lavelle v. Dailey*, 177 Ohio St. 25, 201 N.E.2d 599 (1964). In *Lavelle,* the applicable statute provided that after a board of elections checks a transfer petition's signatures and finds them to be sufficient, the " 'board of education shall promptly certify the proposal to the board of elections * * * for the purpose of having the proposal placed on the ballot * * *.' " (Emphasis deleted.) *Id*. at 26-27, quoting former R.C. 3311.231, Am.H.B. No. 1, 129 Ohio Laws 582, 773. Regarding this language—which is nearly identical to that in R.C. 3311.242(B)—this court stated in *Lavelle*: "No discretion is placed in the board of education. Once the petition has been determined to be sufficient, then it is the mandatory duty of the board of education to certify it to the board of elections, so that it may be placed on the ballot." *Id*. at 27; *see Dunn I*, 158 Ohio St.3d 370, 2020-Ohio-40, 143 N.E.3d 488, at ¶ 10.

{¶ 25} And as we explained in *Dunn I*, because R.C. 3311.242 imposes mandatory, ministerial duties on the school board to certify transfer petitions, the school board has no "discretion to refuse to submit a petition to the board of elections based on the school board's own determination that the petition is invalid * * *. The statute does not empower a school board to determine the validity of a

petition." *Dunn I* at ¶ 15. The school board therefore lacked authority under R.C. 3311.242 to reject a transfer proposal based on the school board's own determination that the proposed transfer, if approved by the voters and effectuated under the process set forth in R.C. 3311.242, would violate R.C. 3311.06(B) by creating a noncontiguous school district.[2]

{¶ 26} In *Dunn II*, we explained that if a school board has the opportunity to take the action necessary for a proposal to appear on the ballot sought by its proponents but declines to do so for reasons outside its authority, a writ of mandamus ordering the proposal submitted for placement on the sought-after ballot is appropriate. *Dunn II*, ___ Ohio St.3d ___, 2020-Ohio-339, ___ N.E.3d ___, at ¶ 20-22; *see also Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 57, 641 N.E.2d 1075 (1994) (writ issued when city council "delayed its determination of the sufficiency of the petition based in part on a substantive objection outside the scope of its authority"). This is so even if the school board has already certified the proposal for a later election. *See State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 53, 572 N.E.2d 649 (1991), citing *State ex rel. Jurcisin v. Cotner*, 10 Ohio St.3d 171, 173, 462 N.E.2d 381 (1984).

{¶ 27} Here, Cook complains of two delays on the school board's part. First, despite R.C. 3311.242(C)'s requirement that the school board cause the elections board to verify the sufficiency of the signatures "[u]pon receiving" the petition, the school board waited a week before it voted to forward the petition to the elections board, and it then waited three more days before actually doing so.

---

2. Because R.C. 3311.242(B) provides that the board of education of a school district has a duty to promptly certify "a proposal to transfer territory from the district to another school district to which the territory is *adjoining*" (emphasis added), a school board does have the authority to reject proposals to transfer territory when it is apparent that the territory does not adjoin the transferee school district. *See Dunn I* at ¶ 13 (upon receiving petition, school board was authorized to "examine whether it appeared to be a transfer petition under R.C. 3311.242 and whether the petition was signed by what appeared to be at least 10 percent of the qualified electors"). However, the school board has never asserted that it is apparent that Petition L or Petition M involves nonadjacent territory.

Second, despite R.C. 3311.242(B)'s requirement to promptly certify the proposal to the elections board for placement on the ballot and despite receiving the verification of the signatures from the elections board in time to meet the May 6 deadline (even accounting for the required 24-hour notice for board meetings mentioned by the school board in its brief, *see* R.C. 121.22(F)), the school board delayed the certification until May 8.

{¶ 28} The school board acknowledges that both of these delays were caused by the "fact-finding process" in which its title agent evaluated proposals for compliance with R.C. 3311.06. The school board admits that it delayed holding a meeting to forward Petition M to the elections board for signature verification because when the school board received Petition M, its title agent was reassessing whether the transfer proposed in Petition A would result in a noncontiguous school district and it wanted to act on both petitions at the same meeting. The school board states that the week of April 27 "gave the Board time to allow the facts to develop so the Board could do exactly what Relator's counsel wanted, which was to have Petition A placed on the ballot prior to the special-election deadline. And at that same meeting, it adopted a resolution authorizing the transmittal of the new Petition M to the Board of Elections." The school board further states that it waited to certify the Petition M proposal until its title agent could complete her review of it and that that review was delayed by a day due to the title agent's unavailability.[3]

{¶ 29} The timetable for certifying Petition M was undoubtedly short. Nevertheless, the evidence establishes that the school board could have completed both required certifications in the time available in this case but for its attempt to

---

3. The school board argues that Cook does not challenge its use of a process that involves fact-finding by a title agent. However, the school board's authority is delineated by R.C. 3311.242, not by the scope of Cook's challenge. Moreover, even if this point were relevant, Cook has maintained in his filings in this action that the school board's duty was purely ministerial and that it had no discretion to reject transfer proposals; his counsel made the same arguments to the school board in correspondence during March and April.

enforce R.C. 3311.06(B) in contravention of the express mandates of R.C. 3311.242. Accordingly, we conclude that the school board had the opportunity to certify the proposal for placement on the August 4 special-election ballot but declined to do so for reasons outside its authority. We will therefore issue a writ of mandamus against the school board.

{¶ 30} In *Dunn II*, as in this case, the school board had issued a certification but the certification named an election later than the one sought by the petition's proponents. In *Dunn II*, we declined to issue a writ ordering the school board to issue a new certification specifying the correct election date, because "R.C. 3311.242(B)(2) requires a school board to specify the date of the election in its certification only if the proposal is to be placed on the ballot at a special election" and the proposal at issue in *Dunn* was intended for a primary election. *Dunn II*, ___ Ohio St.3d ___, 2020-Ohio-339, ___ N.E.3d ___, at ¶ 13. Therefore, the original certification's "reference to the November 3 election was inconsequential and [had] no binding effect." *Id*. at ¶ 14. Here, by contrast, the proposal *was* intended for a special election, the date of which R.C. 3311.242(B)(2) *did* require to be included in the school board's certification.

{¶ 31} Accordingly, we grant a writ of mandamus ordering the school board to certify Petition M to the board of elections for placement on the August 4 special-election ballot and to comply with R.C. 3311.242(B)'s other requirement—that it file the proposal and a map of the affected territory with the State Board of Education under R.C. 3311.242(B)(1)—if it has not already done so.

{¶ 32} Finally, we deny the writ as to the board of elections. Because the elections board has not failed to take action on a resolution certifying the proposal for placement on the August 4 ballot, it has not abused its discretion or clearly disregarded applicable law, so Cook's mandamus claim against the elections board is not ripe.

### III. CONCLUSION

**{¶ 33}** Based on the foregoing, we grant a writ of mandamus ordering the school board to certify the transfer proposal for placement on the August 4 special-election ballot. We deny the writ as to the elections board.

Writ granted as to Bowling Green City School District Board of Education and writ denied as to Wood County Board of Elections.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

————————————

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Scott M. Zurakowski, Owen J. Rarric, Joseph J. Pasquarella, and Amanda M. Connelly, for relator.

Bricker & Eckler, L.L.P., Quintin F. Lindsmith, Rebecca C. Princehorn, and Aaron D. Rothey, for respondent Bowling Green City School District Board of Education.

Paul A. Dobson, Wood County Prosecuting Attorney, and Linda F. Holmes, Assistant Prosecuting Attorney, for respondent Wood County Board of Elections.

————————————